# GIBBS *v.* CONSOLIDATED GAS COMPANY OF BALTIMORE.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

No. 220.   Argued March 19, 20, 1889. — Decided April 15, 1889.

Courts decline to enforce contracts which impose a restraint, though only partial, upon business of such character, that restraint to any extent will be prejudicial to the public interest.

But where the public welfare is not involved and the restraint upon one party is not greater than protection to the other party requires, a contract in restraint of trade may be sustained.

A corporation cannot disable itself by contract from the performance of public duties which it has undertaken, and thereby make public accommodation or convenience subservient to its private interests.

Where particular contracts are inhibited by statute, and if attempted, are in positive terms declared "utterly null and void," such contracts will not be enforced.

Recovery cannot be had for services rendered, or losses incurred, in securing the execution of an illegal agreement, by a party privy to the unlawful design.

THE case, as stated by the court in its opinion, was as follows:

Plaintiff in error brought this action in the Circuit Court of the United States for the District of Maryland against the defendant in error, "a corporation duly incorporated under the laws of Maryland, for money payable by the defendant to the plaintiff," as stated in the "bill of particulars of plaintiff's claim," "for services rendered by me at your request in negotiating and consummating an arrangement and settlement of differences between the Consolidated Gas Co. of Balto. City and the Equitable Gas-Light Co. of Balto. City, between July 1st, 1884, and November 1st, 1884, $50,000;" and a trial was had upon the general issue pleaded, resulting in verdict and judgment for the defendant, May 14, 1885.

From the bill of exceptions it appears that: "At the trial of this case, the incorporation of the defendant being admitted,

the plaintiff, to maintain the issues upon his part joined, gave in evidence the agreement following between said defendant and the Equitable Gas-Light Company of Baltimore City, a Maryland corporation — that is to say :

" ' AGREEMENT.

" 'This agreement made this seventh day of October, eighteen hundred and eighty-four, between the Equitable Gas-Light Company of Baltimore City, a corporation duly organized under the laws of the State of Maryland, party of the first part, and the Consolidated Gas Company of Baltimore City, a corporation duly organized under the laws of the same State, party of the second part. Whereas the parties hereto conduct the business of making and selling gas in the city of Baltimore, Maryland, and for some time past have been drawn into active competition, resulting in a loss of profits to each company, as well as large expenses and great annoyance; and whereas each party hereto desires to enter into an arrangement with the other, whereby the business of each may be conducted in a more profitable manner than at present :

" 'Now, therefore, in consideration of the premises and of the mutuality hereof, it is hereby agreed between said parties as follows, viz. : .

" '1. Gas shall be sold by each company at a rate of one dollar and seventy-five cents per thousand cubic feet, with a rebate of fifteen cents a thousand feet to consumers for payment within seven days from date of rendering bill, unless the rate shall be changed by mutual agreement of the parties hereto in writing; but in view of the much larger interest of the party of the second part in the subject-matter of this contract, it is agreed that in case of competition on the part of any other gas company the said party of the second part shall have the right at its discretion to reduce the rate at which gas shall be sold by either or both of the parties hereto, and shall have the right at its discretion to fix and change said price at which gas shall be sold by either or both of the parties hereto, from time to time so long as such competition shall continue : *Provided,* That said price shall not be placed at less than one

dollar ($1.00) per thousand feet without the mutual consent of the parties hereto in writing. The introduction of gas from the street main to the inside of the building to be lighted will in all cases be done by the companies, for which the proprietor of the building or the person applying for the supply of gas will be required to pay in advance the sum of eight. dollars ($8.00) to cover the expenses of tapping main, laying service pipe, setting meter and its connection to the building line. An extra charge will be made where the building is set back from the building line.

"'2. Each party hereto shall deduct from its receipts and retain the sum of one dollar for every thousand feet of gas sold by it as a basis of cost to cover all expenses of the business of each.

"'3. All extensions of mains, including services and meters on said extensions, and all enlargement of the capacity of the works necessary to do the increasing business during the continuance of this agreement, shall be made by the Consolidated Gas Company of Baltimore City at its own cost and expense, whose property such enlargements and extensions shall be, the Equitable Company only being required to provide the meters and services necessary to supply such additional consumers as may be furnished by it under § 5, below.

"'4. Division of receipts shall be made as follows, viz.:

"'1. All receipts (over and above the sum of one dollar per thousand feet allowed as a basis of cost) from gas sold each year upon sales not exceeding the total quantity of gas sold by both of said companies during the year ending October first, eighteen hundred and eighty-four, shall be divided between the parties hereto in the following proportions, viz.: The party of the first part shall receive such a proportion of the same as the amount of gas sold by it during the year ending October first, eighteen hundred and eighty-four, shall bear to the total quantity of gas sold by both of the parties hereto during that period, provided the quantity sold by the party hereto of the first part during said period shall not exceed two hundred and thirteen millions of feet (213,000,000), and the party of the second part shall receive all the balance after deducting the amount to

which the party of the first part shall be entitled, as above provided, it being expressly understood and agreed that the basis of participation in said receipts shall be the proportion which the quantity of gas sold by each party from October first, eighteen hundred and eighty-three, to October first, eighteen hundred and eighty-four, bears to the total quantity of gas sold by both parties hereto, and that neither party hereto shall receive more thereof than by such a basis of division it would be entitled to, subject, however, to the foregoing provision that the quantity sold by the party of the first part during the said year ending October first, eighteen hundred and eighty-four, shall not be considered as exceeding two hundred and thirteen millions (213,000,000) of feet as aforesaid.

" ' 2. All receipts (over and above the said allowance of one dollar per thousand feet as a basis of cost) from gas sold each year upon sales in excess of the said total quantity sold during the year ending October first, eighteen hundred and eighty-four, shall be divided as follows, viz.: The party of the first part shall receive thereout a percentage equal to one-half of the percentage which it will receive as above, and the party of the second part shall receive all the balance of such receipts from said increased sales.

" ' 5. Neither party hereto shall solicit any business belonging to the other, but either party may take such consumers of the other as may voluntarily, without any solicitation, desire to change from one to the other.

" ' 6. All the accounts between the parties hereto hereunder shall be adjusted quarterly on the tenth days of February, May, August, and November of each year for the quarter ending on the last day of December, March, June, and September, and settlements of all balances shall be made within ten days thereafter. The said adjustment of accounts shall be made by an auditor, who shall be chosen by the agreement of both parties hereto.

" ' 7. If any differences or misunderstanding arise hereunder, the matter in dispute shall be referred for decision to three arbiters, whose decision shall be binding upon the parties hereto, so far as in law it may have binding force and effect.

Said arbiters shall be chosen as follows, viz.: One shall be chosen by each party hereto and the third by the two so chosen: *Provided*, That if either party hereto neglects or refuses for ten days after request, in writing, mailed or personally delivered, to appoint an arbiter, the party making such request shall appoint two arbiters, who shall appoint a third, as above provided.

" ᴬ8. It is further understood and agreed that if either party hereto shall at any time wilfully fail, omit, or neglect to perform or shall violate any of the covenants herein contained, such party shall be liable to the other for all loss and damage caused to or suffered by it thereby, and that the damages which shall be caused thereby will be equal to the sum of two hundred and fifty thousand dollars ($250,000), and that the party who shall so fail, neglect, or omit to perform, or who shall violate any of the covenants herein contained, shall at once thereupon pay to the other party the sum of two hundred and fifty thousand dollars as liquidated damages, and that upon failure to pay the same upon demand suit may be brought therefor, in which the damages so caused or suffered shall be assessed at said sum of two hundred and fifty thousand dollars.

" ᶜ 9. This agreement shall take effect from October fifteenth, eighteen hundred and eighty-four, and shall continue in force for thirty years from its date.'

[Duly signed and sealed October 7th, 1884.]

"The plaintiff then proved the incorporation of the United Gas Improvement Company, a corporation incorporated by and doing business in the State of Pennsylvania.

"The plaintiff further proved that, at the time of the agreement aforesaid, he was the general manager of the said United Gas Improvement Company, and the business of the said corporation was the owning, improving, leasing, and manipulation of gas property throughout the country, said company being the owner of many gas-works in various parts of the Union, and constantly in negotiation for the sale and purchase of that kind of property.

"He further proved that, by reason of the rivalry in the city of Baltimore between the defendant and the Equitable

Gas-Light Company aforesaid, the price of gas had been reduced to a figure below that at which it could be profitably manufactured, and that the company of which the plaintiff was manager, as well as other gas companies throughout the country, had been materially inconvenienced by the fact that they were required and expected by their customers to sell their gas at the insufficient price at which it was furnished in Baltimore. It became, therefore, the interest of the plaintiff and his company that the conflict in Baltimore should, if possible, be brought to an amicable termination, and the plaintiff made a suggestion to that effect to the president of the Equitable Gas-Light Company, and in consequence thereof was employed by that company to bring about a settlement, if possible, with the defendant. For this purpose the plaintiff visited Baltimore and opened negotiations with the defendant, which were carried on for some time by proposition and counter-proposition, and resulted, finally, in the agreement heretofore inserted in this bill of exceptions.

"The plaintiff gave further evidence tending to show that early in those negotiations he informed the defendant, through the committee representing it, that he was employed and would be paid by the Equitable Gas-Light Company if he made an arrangement satisfactory to that company, and that if he should be successful in bringing about a settlement satisfactory to the defendant also, he should expect and claim to be compensated by the defendant likewise.

"Further testimony in respect to the matter of his said negotiations and services and his claimed and expected compensation from the defendant was given by the plaintiff tending to support and establish the hypotheses of fact set up by the plaintiff in those regards in his prayers hereinafter to be inserted.

"The defendant then, to maintain the issues upon its part joined, gave in evidence the acts of the General Assembly of Maryland of 1867, chap. 132, and of 1882, chap. 337, both relating to the Equitable Gas-Light Company of Baltimore City, which it was agreed might be read in evidence, if necessary, from the statute-book, on the hearing in error.

"The defendant further gave evidence tending to contradict the evidence on the part of the plaintiff in regard to what occurred between the plaintiff and the defendant's committee in respect to the negotiations aforementioned, and to the plaintiff's alleged demand for compensation from the defendant, and tending to disprove the facts assumed as the hypotheses of the plaintiff's prayers; and the defendant further gave evidence tending to establish and maintain the hypotheses of fact set up by the defendant in its prayers to the court, hereinafter to be inserted."

Various instructions were asked on behalf of each of the parties, which the court declined to give, but at defendant's request instructed the jury "that the plaintiff, upon the pleadings and evidence in this case, is not entitled to recover, because the contract offered in evidence, and for the procuring of the making whereof he claims compensation in this suit, was illegal and void."

*Mr. S. T. Wallis*, for plaintiff in error, cited: *Leslie v. Lorillard*, 110 N. Y. 519; *Kellogg* v. *Larkin*, 3 Chandler (Wisconsin), 133; *S. C.* 56 Am. Dec. 164; *Jencks* v. *Coleman*, 2 Sumner, 221; *Central Shade Roller Co.* v. *Cushman*, 143 Mass. 353; *Palmer* v. *Stebbins*, 3 Pick. 188; *S. C.* 15 Am. Dec. 204; *Richardson* v. *Mellish*, 2 Bing. 229; *Davies* v. *Davies*, 36 Ch. D. 359; *Printing &c. Co.* v. *Sampson*, L. R. 19 Eq. 462; *Trust Estate of Woods*, 52 Maryland, 520; *Vidal* v. *Girard*, 2 How. 126, 197; *Richmond* v. *Dubuque &c. Railroad*, 26 Iowa, 191; *Swann* v. *Swann*, 21 Fed. Rep. 299; *Walsh* v. *Fussell*, 6 Bing. 163; *Hobbs* v. *McLean*, 117 U. S. 567; *United States* v. *Central Pacific Railroad*, 118 U. S. 235; *Baines* v. *Geary*, 35 Ch. D. 154; *Roussillon* v. *Roussillon*, 14 Ch. D. 351; *Provident Bank* v. *Marshall*, 40 Ch. D. 112; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Mogul Steamship Co.* v. *McGregor*, 21 Q. B. D. 544; *Hare* v. *London &c. Railway*, 2 Johns. & Hem. 80; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *New Orleans Waterworks* v. *Rivers*, 115 U. S. 674; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683; *Booth* v. *Robinson*, 55 Maryland, 419; *Skrainka*

v. *Scharringhausen*, 8 Missouri App. 522; *Androscoggin & Kennebec Railroad* v. *Androscoggin Railroad*, 52 Maine, 417; *Hilton* v. *Eckersley*, 6 El. & Bl. 47; *Hornby* v. *Close*, L. R. 2 Q. B. 153; *Collins* v. *Locke*, 4 App. Cas. 674; *Thomas* v. *Railroad Co.*, 101 U. S. 71, 83; *St. Louis* v. *St. Louis Gaslight Co.*, 5 Missouri App. 484; *Arnot* v. *Pittiston &c. Coal Co.*, 68 N. Y. 558; *India Bagging Association* v. *Kock*, 14 La. Ann. 168; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Penn. St. 173; *Planters' Bank* v. *Union Bank*, 16 Wall. 483; *Western Union Tel. Co.* v. *Burlington &c. Railway*, 3 McCrary, 130; *Cook* v. *Sherman*, 4 McCrary, 20.

*Mr. R. D. Morrison* and *Mr. N. P. Bond*, for defendant in error, cited: *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683; *Morris Run Coal Company* v. *Barclay Coal Company*, 68 Penn. St. 173; *Hartford & New Haven Railroad* v. *New York & New Haven Railroad*, 3 Robertson (N. Y.) 411; *Stanton* v. *Allen*, 5 Denio, 435; *S. C.* 49 Am. Dec. 382; *St. Louis* v. *St. Louis Gas Light Co.*, 5 Missouri App. 484; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *York & Maryland Line Railroad* v. *Winans*, 17 How. 30; *Sinking Fund Cases*, 99 U. S. 700; *Pennsylvania College Cases*, 13 Wall. 190; *Irwin* v. *Williar*, 110 U. S. 499; *Salt Lake City* v. *Hollister*, 118 U. S. 256; *National Bank* v. *Matthews*, 98 U. S. 621; *Harris* v. *Runnels*, 12 How. 79; *Craig* v. *Missouri*, 4 Pet. 410; *Bank of the United States* v. *Owens*, 2 Pet. 527; *Aubert* v. *Maze*, 2 Bos. & Pul. 374; *Watts* v. *Brooks*, 3 Ves. Jr. 612; *Webb* v. *Pritchett*, 1 Bos. & Pul. 264.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

The plaintiff sought to recover compensation for services alleged to have been rendered by him to the defendant in securing the contract in question between the defendant and the Equitable Gas-Light Company of Baltimore. It is objected that the court erred in giving the instruction that the plaintiff was not entitled to recover, because it assumed a material fact

in dispute, which should have been left to the jury, namely, that it was "for the procuring of the making" of the contract offered in evidence that compensation was claimed. The record does not show that this objection to the instruction was taken in the court below, nor does it contain any evidence tending to establish that the plaintiff claimed compensation for anything else than for services in bringing about the agreement. Plaintiff's bill of particulars is for services "in negotiating and consummating an arrangement and settlement of differences" between the two gas companies, and he put the contract in evidence and adduced proof that he carried on negotiations, which "resulted finally" in the execution of it. He was general manager of a corporation engaged in the business of "the owning, improving, leasing and manipulation of gas property throughout the country," and as his company and other gas companies "had been materially inconvenienced by the fact that they were required and expected by their customers to sell their gas at the insufficient price at which it was furnished in Baltimore," he suggested "that the conflict in Baltimore should, if possible, be brought to an amicable termination," "and in consequence thereof" was employed by the Equitable Gas-Light Company "to bring about a settlement, if possible, with the defendant." The conflict referred to seems to have been the competition in the making and vending of gas in the city of Baltimore, which it had been the object of the General Assembly of Maryland to encourage, and the settlement to which he alludes was embodied in the contract in question, by which competition was to be destroyed and the object of the General Assembly defeated.

We do not feel called upon, under such circumstances, to reverse the judgment, upon the ground that the court assumed, in the instruction a matter of fact which should have been left to the jury to determine.

According to the evidence given by the plaintiff, he informed the defendant "that he was employed and would be paid by the Equitable Gas-Light Company, if he made an arrangement satisfactory to that company, and that if he should be successful in bringing about a settlement satisfactory to the

defendant also, he should expect and claim to be compensated by the defendant likewise."

Since he had thus entered upon the enterprise under a specific agreement with the Equitable Gas Company, it is somewhat difficult to understand upon this record how, in carrying such an express contract out, he could impose the obligation on the defendant to pay him for doing so, upon a mere notification that he should expect from it compensation for the services he had expressly agreed to render the other company, because the result might be satisfactory to the defendant — a result necessarily to be assumed if any contract was arrived at. The defendant could not in that view be held to have laid by and accepted services which the plaintiff would otherwise not have been obliged to perform or could assert that he did perform only upon the expectation of being also paid by the defendant. The hypotheses of fact set up by the plaintiff in the instructions he asked, and which were refused, contain nothing in respect of which testimony tending to support and establish such hypotheses would add to the mere fact of the notification of plaintiff's expectation, and the evidence on defendant's part tended to show a denial of any obligation to pay. But apart from this, the real question submitted to us for decision is whether, even if there were no other objection to plaintiff's recovery, such recovery could be allowed in view of the nature of the alleged services.

In *Irwin* v. *Williar,* 110 U. S. 499, 510, it was held that where a contract, void on account of the illegal intent of the principal parties to it, had been negotiated by a person ignorant of such intent, and innocent of any violation of law, the latter might have a meritorious ground for the recovery of compensation for services and advances, but when such agent "is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis,* and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction." It is clear from the evidence adduced by the plaintiff that he falls within the category last described; and he makes profert of the fact that

the first suggestion in the line of manipulating the gas interests of Baltimore came from himself. Hence, if the contract he brought about was forbidden by statute, or by public policy, it is evident that he could not recover, and the judgment must be affirmed.

By this contract it is recited that active competition between the two companies had resulted in expense, annoyance and loss of profits, and it was therefore provided that the price of gas to consumers should be placed at one dollar and seventy-five cents per thousand cubic feet, with a rebate of fifteen cents a thousand feet for payment within seven days, "unless the rate shall be changed by mutual agreement of the parties hereto in writing;" but as the defendant had much the larger interest, it might, in case of competition on the part of any other gas company, reduce the rate at which gas should be sold "by either or both of the parties hereto, from time to time so long as such competition shall continue," provided it should not be put at less than one dollar per thousand feet without the written consent of both parties; that the entire net receipts from the sale of gas should be pooled and divided between the companies in a fixed ratio without regard to the amount of gas actually supplied by either; that one of the companies should lay no more pipes or mains for the supply of gas in the city; that all future pipes or mains should be laid by and remain the property of the other company; and that either party which violated any of the covenants in the contract should pay to the other the sum of $250,000 as liquidated damages. It will be perceived that this was an agreement for the abandonment by one of the companies of the discharge of its duties to the public, and that the price of gas as fixed thereby should not be changed except that, in case of competition, the rate might be lowered by one, but not below a certain specified rate, without the consent of the other. And in the case in hand the Equitable Gas-Light Company was expressly forbidden to enter into such a contract. That company was incorporated by an act of the General Assembly of Maryland, passed March 6, 1867, with a capital of two millions of dollars, which might be increased to three millions, and with

authority to lay pipes along and under the streets, squares, lanes and alleys of the city of Baltimore, and to supply with light any dwelling house or other buildings or places whatever belonging to individuals or corporations, adjacent to any such street, square, lane or alley, and with ' all the rights and privileges granted to the Gas-Light Company of Baltimore, by the second, third, fourth and fifth sections of the ordinances of the mayor and city council of Baltimore, entitled an ordinance to provide for more effectually lighting the streets, squares, lanes and alleys of the city of Baltimore, approved June seventeenth, eighteen hundred and sixteen, and the act of assembly of December session, eighteen hundred and sixteen, chapter two hundred and fifty-one, so far as the same are not inconsistent with the provisions of this act, and the said company hereby incorporated shall be liable to all the duties, restrictions and penalties [provided] for in said sections of said ordinance and in said act of assembly." Laws of Maryland, 1867, pp. 207, 211, 212.

Reference to the act and ordinance of 1816, Maryland Laws, 1813–1817, c. 251, 1816; Ordinances, Baltimore, 1813–1822, p. 95, does not contribute to the argument here save as indicating the design of the General Assembly to give equal powers to a competing company. Said act of March 6, 1867, § 14, further provided that "the General Assembly hereby reserves the right to alter, amend, or repeal this act at pleasure." Laws of Maryland, 1867, 207, 214.

On the 3d of May, 1882, an act supplementary to the act incorporating the Equitable Gas-Light Company of Baltimore City was approved, (Laws of Maryland, 1882, 551, c. 337,) authorizing and empowering said company to manufacture and sell gas in Baltimore County as well as in Baltimore City, and to exercise all the powers and rights conferred upon it by the acts of assembly and any amendments thereto, including the right to lay all necessary and convenient pipes, etc., in the county as well as in the city, and the fourth section of this act was as follows:

"That the said company be, and hereby is, prohibited from entering into any consolidation, combinations, or contract with any other gas company whatever; and any attempt to

do so, or to make such combinations or contracts as herein prohibited, shall be utterly null and void."

In *Greenwood* v. *Freight. Co.*, 105 U. S. 13, the right to repeal the charter of a street railroad company was sustained under a provision of the General Statutes of Massachusetts declaring "every act of incorporation passed after the 11th day of March, in the year 1831, shall be subject to amendment, alteration, or repeal at the pleasure of the legislature."

In *Close* v. *Greenwood Cemetery*, 107 U. S. 466, 476, it was said that "a power reserved to the legislature to alter, amend, or repeal a charter authorizes it to make any alteration or amendment of a charter granted subject to it, which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right."

Similar views were expressed in *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *County of Callaway* v. *Foster*, 93 U. S. 567, and other cases.

The consent of the corporation was not required to the operation of such a provision as that embodied in the fourth section of the act of 1882, but if acceptance were necessary, the exercise of corporate action by this gas company after the passage of the amendment was sufficient evidence of such acceptance.

The supplying of illuminating gas is a business of a public nature to meet a public necessity. It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual effort. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683; *Shepard* v. *Milwaukee Gas Co.*, 6 Wisconsin, 539; *Chicago Gas-Light & Coke Co.* v. *Peoples' Gas-Light & Coke Co.*, 121 Illinois, 530; *St. Louis* v. *St. Louis Gas-Light Co.*, 70 Missouri, 69. Hence, while it is justly urged that those rules which say that a given contract is against public policy, should not be arbitrarily extended so as to interfere with the freedom of contract, *Printing &c. Registering Co.* v. *Sampson*, L. R. 19 Eq. 462, yet in the instance of business of such character that

it presumably cannot be restrained to any extent whatever without prejudice to the public interest, courts decline to enforce or sustain contracts imposing such restraint, however partial, because in contravention of public policy. This subject is much considered, and the authorities cited in *West Virginia Transportation Co.* v. *Ohio River Pipe Line Co.*, 22 West Va. 600; *Chicago &c Gas Co.* v. *Peoples' Gas Co.*, 121 Illinois, 530; *Western Union Telegraph Co.* v. *American Union Telegraph Co.*, 65 Georgia, 160.

The decision in *Mitchel* v. *Reynolds*, 1 P. Wms. 181; *S. C.* Smith's Leading Cases, 407, 7th Eng. Ed.; 8th Am. Ed. 756, is the foundation of the rule in relation to the invalidity of contracts in restraint of trade; but as it was made under a condition of things, and a state of society, different from those which now prevail, the rule laid down is not regarded as inflexible, and has been considerably modified. Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is, whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is, or is not, unreasonable. *Rousillon* v. *Rousillon*, 14 Ch. D. 351; *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 345.

" Cases must be judged according to their circumstances," remarked Mr. Justice Bradley in *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64, 68, "and can only be rightly judged when the reason and grounds of the rule are carefully considered. There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy. One is, the injury to the public by being deprived of the restricted party's industry; the other is, the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family. It is evident that both these evils occur when the contract is general, not to pursue one's trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in both cases; and the party is deprived of his occupation, or is obliged to expatriate himself in

order to follow it.   A contract that is open to such grave objection is clearly against public policy.   But if neither of these evils ensue, and if the contract is founded on a valid consideration and a reasonable ground of benefit to the other party, it is free from objection, and may be enforced."   Innumerable cases, however, might be cited to sustain the proposition that combinations among those engaged in business impressed with a public or *quasi* public character, which are manifestly prejudicial to the public interest, cannot be upheld.   The law "cannot recognize as valid any undertaking to do what fundamental doctrine or legal rule directly forbids.   Nor can it give effect to any agreement the making whereof was an act violating law. So that, in short, all stipulations to overturn — or in evasion of — what the law has established; all promises interfering with the workings of the machinery of the government in any of its departments, or obstructing its officers in their official acts, or corrupting them; all detrimental to the public order and public good, in such manner and degree as the decisions of the courts have defined; all made to promote what a statute has declared to be wrong, — are void."   Bishop on Contracts, § 549; *Woodstock Iron Co.* v. *Richmond & Danville Extension Co.*, 129 U. S. 643, decided at this term, opinion by Mr. Justice Field; *Trist* v. *Child*, 21 Wall. 441; *Irwin* v. *Williar*, 110 U. S. 499; *Arnot* v. *Pittston &c. Coal Co.*, 68 N. Y. 558; *Central Salt Co.* v. *Guthrie*, 35 Ohio St. 666; *Woodruff* v. *Berry*, 40 Ark. 251, 261; *H. & N. H. Railroad* v. *N. Y. & N. H. Railroad*, 3 Robert. (N. Y.) 411; *Craft* v. *McConoughy*, 79 Ill. 346; *Hooker* v. *Vandewater*, 4 Denio, 349; *Stanton* v. *Allen*, 5 Denio, 434; *Central Railroad* v. *Collins*, 40 Georgia, 582; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Penn. St. 173.

It is also too well settled to admit of doubt that a corporation cannot disable itself by contract from performing the public duties which it has undertaken, and by agreement compel itself to make public accommodation or convenience subservient to its private interests.

"Where," says Mr. Justice Miller, delivering the opinion of the court in *Thomas* v. *Railroad Co.*, 101 U. S. 71, 83, "a corporation, like a railroad company, has granted to it by char-

ter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes without the consent of the State to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State and is void as against public policy."

These gas companies entered the streets of Baltimore, under their charters, in the exercise of the equivalent of the power of eminent domain, and are to be held as having assumed an obligation to fulfil the public purposes to subserve which they were incorporated. At common law corporations formed merely for the pecuniary benefit of their shareholders could, by a vote of the majority thereof, part with their property and wind up their business, but corporations to which privileges are granted in order to enable them to accommodate the public, and in the proper discharge of whose duties the public are interested, do not come within the rule. But we are not concerned here with the question when, if ever, a corporation can cease to operate without forfeiture of its franchises, upon the excuse that it cannot go forward because of expense and want of remuneration. There is no evidence in this record of any such state of case, and, on the contrary, it appears that the cost of the manufacture of gas was largely below the price to be charged named in the stipulation between the parties. There is nothing upon which to rest the suggestion that the companies were unable to serve the consumers, while the record shows, on the other hand, that they simply desired to make larger profits on whatever gas they might furnish. Nor are we called upon to pass upon the validity generally of pooling agreements. Here the contract was directly in the teeth of the statute, which expressly forbade the Equitable Gas-Light Company from entering into it. That prohibition declared the policy of the State as well as restrained the particular corporation.

The distinction between *malum in se* and *malum prohibi-*

*tum* has long since been exploded, and as "there can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal," *Bank of United States* v. *Owens,* 2 Pet. 527, 539, it is clear that contracts in direct violation of statutes expressly forbidding their execution, cannot be enforced.

The question is not one involving want of authority to contract on account of irregularity of organization or lack of affirmative grant of power in the charter of a corporation, but a question of the absolute want of power to do that which is inhibited by statute, and, if attempted, is in positive terms declared "utterly null and void."

"The rule of law," said Parker, C. J., in *Russell* v. *De Grand,* 15 Mass. 35, 39, "is of universal operation, that none shall, by the aid of a court of justice, obtain the fruits of an unlawful bargain."

We cannot assist the plaintiff to get payment for efforts to accomplish what the law declared should not be done, and the judgment must be

*Affirmed.*