## KOHN *et al. v.* MELCHER.

*(Circuit Court, S. D. Iowa, W. D.* October 7, 1890.)

**1.** CONTRACTS—VALIDITY—PUBLIC POLICY—INTOXICATING LIQUOR.
   Where liquor is sold to a pharmacist for the express purpose of enabling him to retail it as a beverage, in violation of law, the price of such liquor cannot be recovered by suit, even though the sale itself was not illegal.

**2.** INTOXICATING LIQUOR—CONSTRUCTION OF STATUTE.
   Code Iowa, § 1550, which provides that payments made for intoxicating liquor sold in violation of the prohibitory law shall be deemed to have been made upon a promise of repayment, does not apply to payments made by a registered pharmacist for liquor intended to be sold by him contrary to law, and which he purchases in the original packages from a resident of another state.

At Law.   Action on notes and counter-claim.

*Wright, Baldwin & Haldane,* for plaintiffs.

*Lehmann & Park, Rockafellow & Scott,* and *Willard & Fletcher,* for defendant.

SHIRAS, J.   In this cause the parties waived a jury, and submitted the case to the court.   The evidence shows the following facts:

(1) The firm of Kohn & Adler, plaintiffs herein, are now, and for years past have been, engaged in the business of selling spirituous liquors at wholesale; the headquarters thereof being established at Rock Island, Ill., of which state the plaintiffs are now, and have been for years, citizens.

(2) The defendant, during the period of time involved in this case, has been a resident of Atlantic, Cass county, Iowa, engaged in the drug business, holding a permit from the county authorities to sell spirituous liquors for medicinal, culinary, and sacramental purposes.

(3) That the defendant, under cover of his permit to sell for legal purposes, has been engaged in the business of selling intoxicating liquors as a beverage, in quantities to suit purchasers, or, in other words, has been practically running a saloon in connection with his business as a druggist; the liquors sold being drunk on defendant's premises, or carried away, at the option of the purchasers.

(4) Since June 25, 1884, plaintiffs have sold and delivered to defendants spirituous liquors to the amount of $3,840.80, upon which defendant has paid the sum of $2,959.70, leaving a balance due on December 1, 1885, of $887.10, which is partly evidenced by three promissory notes,—two bearing date September 15, 1885, for $124.25 each, and the third bearing date September 20, 1885, for $124.20,—executed by defendant, and payable to order of plaintiffs.

(5) The liquors thus sold were contracted for and delivered as follows: Every few weeks Edward Kohn, one of the plaintiffs, would visit defendant's place of business at Atlantic, Iowa, and defendant would then and there contract with him for the purchase of such liquors as he then needed.   The liquors so purchased would from time to time be forwarded from Rock Island, Ill., to Atlantic, Iowa, by rail, being delivered to the railway company at Rock Island, Ill.

(6) The payments made upon the account were usually made at Atlantic, Iowa, to Edward Kohn in person, although in some instances the sums paid were remitted by letter to plaintiff at Rock Island, Ill.

(7) Edward Kohn, and, through him, his said firm, plaintiffs herein, knew that defendant was engaged in selling the liquors furnished him in the manner already stated.

(8) The defendant, in making the monthly reports to the county auditor of

the sales, and profit thereon derived from the sales, of spirituous liquors, under the requirements of the state statute, falsely stated the amounts thereof, and the profit derived therefrom, and intentionally concealed the fact that he was engaged in selling spirituous liquors as a beverage, and not solely for the four legal purposes contemplated by the provisions of the statute of Iowa.

(9) In order to aid the defendant in concealing the fact that he was, in violation of the laws of Iowa, running an establishment wherein intoxicating liquors could be purchased and used as a beverage, it was agreed between the plaintiffs, represented by Edward Kohn, and the defendant, at Atlantic, Iowa, that two invoices of the liquors sold to defendant by plaintiffs should be made and furnished by the latter, one of which should show the actual price agreed to be paid for the liquors, and the other a higher fictitious price; the latter invoice to be shown in case a question should arise between the county authorities and the defendant as to the amount of profit realized by defendant in selling under his permit as a druggist. It was likewise agreed that a portion of the liquors sold should be shipped to Atlantic, to a fictitious consignee, so as to aid in concealing the amount of liquors actually received by defendant. It was likewise agreed that a portion of the liquors should be inclosed in boxes and barrels, in such a manner as to conceal the nature of the contents thereof; the marks placed thereon indicating that the contents were hardware, crockery, or goods other than liquors. In pursuance of the agreements thus made, the plaintiffs did, from time to time, furnish to defendant the false invoices agreed upon, and did ship a portion of the goods sold to defendant under a fictitious name, as consigneee, and did pack portions of the liquors and so mark them as to conceal the real nature of their contents.

(10) The liquors sold to defendant by plaintiffs, when received at defendant's place of business at Atlantic, Iowa, were not sold by him in the original packages, but the packages were opened, and the contents retailed in small quantities, which facts were known to the plaintiffs.

(11) Plaintiffs brought this suit to the March term, 1886, of this court, to recover the amount due upon the three promissory notes hereinbefore described, and a balance of an open account; the total sum claimed to be due being $887.10, with interest.

(12) The defendant, by answer, pleads the illegality of the sales under the prohibitory liquor law of the state of Iowa, and by a counter-claim seeks to recover judgment in the sum of $6,396.09 against plaintiffs for moneys alleged to have been paid to plaintiffs for liquors sold by plaintiffs in violation of the statute of Iowa, and under the circumstances recited in the foregoing findings of fact; the illegal agreements set forth in the ninth finding being expressly declared upon in said counter-claim.

In support of the right of recovery on part of plaintiffs, it is argued that the case of *Leisy* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. Rep. 681, establishes the right of plaintiffs to make the sales of liquors to the defendant; that in making such sales they were acting under the protection of the commercial clause of the constitution of the United States; and that the prohibitory liquor law of Iowa cannot be invoked to defeat their right of recovery. If the facts of the case presented no other question than that of a citizen of Illinois importing liquors into Iowa, and selling the same in the original packages, then the doctrine announced in *Leisy* v. *Hardin* would apply.

There is, however, another question which fairly arises on the undisputed facts of the case. For years past, it has been the established policy of the state of Iowa to forbid the sale of intoxicating liquors for

use as a beverage. Provision has been made for the sale of such liquors for certain named uses, and to cover that end the statute provides for licensing parties to make sales of liquors for lawful purposes. It has also been the settled policy of the state for years past to regulate the business of pharmacists, so far as the same includes the compounding and selling of medicines, poisons, and intoxicating liquors. In 1882 the legislature passed an act providing for the examination of parties desiring to carry on such business, for the issuing of certificates to those found competent, defining the duties of such pharmacists, and expressly forbidding such registered pharmacists from selling intoxicating liquors as a beverage. To authorize pharmacists to sell liquors for mechanical and other legal purposes, they are required to procure a license for that purpose, under the provisions of the statute regulating the sale of liquors. As a means looking to the prevention of the abuse of the license to sell liquors for legal purposes, the statute requires the party holding the license to make stated reports to the county auditor of the quantity of liquors sold by him, and the price thereof; and the statute regulating pharmacists makes it a penal offense for one engaged in such business to sell liquors for use as a beverage. It appears from the evidence in this case that the defendant, who was a registered pharmacist, constantly and intentionally violated the provisions of the statute in question, and, under the guise of carrying on the business of a registered pharmacist, he engaged in the business of running a saloon, selling intoxicating liquors by the drink or other quantity to suit purchasers. The plaintiffs well knew the provisions of the laws of Iowa above referred to, well knew that the defendant was violating the same, well knew that the liquors sold to defendant were to be used by defendant in the violation of the laws of the state, well knew that defendant, to carry on said business, was compelled to perjure himself in making oath to the monthly statements furnished the auditor, and with this knowledge the plaintiffs in Iowa contracted, from time to time, to sell the liquors in question to defendant, and agreed to aid him in such wrong-doing by furnishing double invoices, one of which, by falsely stating the price of the liquors, would sustain the perjured statements made by defendant to the auditor; and further agreed to ship part of the liquors to a fictitious consignee, and to so pack other portions of the liquors as to conceal their real nature,—all of which agreements were carried out by plaintiffs. By aiding the defendant in thus violating the laws of Iowa, the sales made by plaintiffs would be increased; because the larger the business of defendant in this particular, the greater need of purchasing from plaintiffs. To recover the balance due from defendant, and resulting from transactions of the nature indicated, the plaintiffs now ask the aid of the court.

It is refused. One who has actively participated in a transaction which involves a violation of the statutes of the state, or the commission of acts contrary to well-recognized public policy or to the criminal laws of the state, or which are injurious to the public morals, cannot successfully invoke the aid of the judicial tribunals to enable him to secure the results of his wrong-doing.

In *Hanauer* v. *Doane*, 12 Wall. 342, it was held that an action would not lie for the price of goods sold with knowledge that they were in fact purchased for the Confederate states government, and in the opinion is cited approvingly the language of Chief Justice EYRE in *Lightfoot* v. *Tenant*, 1 Bos. & P. 551, that "no man ought to furnish another with the means of trangressing the law, knowing that he intended to make that use of them;" and, in summing up the conclusions reached upon a consideration of the authorities, it is said:

"The whole doctrine of avoiding contracts for illegality and immorality is founded on public policy. It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members."

In *Trist* v. *Child*, 21 Wall. 441, a contract for the performance of lobby services in aid of a bill providing for payment of a claim against the government was held void, it being said that—

"In our jurisprudence a contract may be illegal and void because it is contrary to a constitution or statute, or inconsistent with sound policy and good morals. Lord MANSFIELD said: 'Many contracts which are not against morality are still void as being against the maxims of sound policy.' It is a rule of the common law, of universal application, that where a contract, express or implied, is tainted with either of the vices last named, as to the consideration or the thing to be done, no alleged right founded upon it can be enforced in a court of justice."

In *Meguire* v. *Corwine*, 101 U. S. 108, it is said:

"Frauds of the class to which the one disclosed belongs are an unmixed evil. Whether forbidden by a statute, or condemned by public policy, the result is the same. No legal right can spring from such a source."

In *Teal* v. *Walker*, 111 U. S. 242, 4 Sup. Ct. Rep. 420, it was held that a contract between the mortgagor and mortgagee in Oregon, to the effect that upon default in payment the possession of the premises should be surrendered to the mortgagee, was contrary to the settled statutory policy of that state, which secured to the mortgagor the possession of the property until after foreclosure and sale; and, "although not expressly prohibited by law, yet, like all contracts opposed to the public policy of the state, it cannot be enforced."

In *Gibbs* v. *Gas Co.*, 130 U. S. 396, 9 Sup. Ct. Rep. 553, it is said:

"The distinction between *malum in se* and *malum prohibitum* has long since been exploded, and, 'as there can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal,' (*Bank* v. *Owens*, 2 Pet. 527,) it is clear that contracts in direct violation of statutes expressly forbidding their execution cannot be enforced."

The statute of Iowa expressly forbids a registered pharmacist from selling intoxicating liquors as a beverage, and makes a violation of the statutory prohibition an offense punishable by a fine. The plaintiffs and defendant combined together to evade this statute, resorting to fraud and perjury to accomplish that purpose, and the selling the liquors, furnishing false invoices, forwarding the same to a fictitious consignee, and

in concealed packages, were all parts of the illegal transaction of which plaintiffs are now seeking to recover the fruits. The entire transaction between the parties, in all its steps, is tainted with fraud and perjury, and was intended to aid defendant in violating the settled policy and statute of the state, in forbidding the sale of intoxicating liquors as a beverage, and the maintenance of a saloon under the guise of a registered pharmacy; and no right of action can be based upon such a transaction.

Upon the matters declared upon in plaintiffs' petition, for the reasons stated, no recovery can be had, and the like result follows as to the counter-claim filed by defendant. Section 1550 of the Code of Iowa provides, in substance, that all payments made for intoxicating liquors sold in violation of the prohibitory law are deemed to be without consideration, and to have been made and received as upon a promise to repay the same on demand. If the sale made by plaintiffs had been held void by reason of the express provisions of the prohibitory statute, then it might well be that payments made therefor could be recovered back. Section 1550 of the Code refers only to the provisions of chapter 6, tit. 11, thereof, known as the "Prohibitory Liquor Law," and does not include the statute regulating pharmacists.

If the defense to plaintiffs' action was based solely on the fact that they had imported into Iowa, and sold to defendant in original packages, intoxicating liquors, then, under the doctrine announced in *Leisy* v. *Hardin*, the court would have been compelled to hold that to importations of that character the statute of Iowa was not applicable; and, as in such event the plaintiffs would have had the right to sell the liquors, money paid therefor could not be recovered back.

The ground, however, upon which the plaintiffs' right of action for the liquors sold is defeated is that the plaintiffs sold the liquors to the defendant as a registered pharmacist, well knowing that the statute of Iowa regulating pharmacists forbade such pharmacist from selling intoxicating liquors as a beverage; and, in order to aid defendant in evading the statute, they forwarded the liquors in concealed packages, to a fictitious consignee, and furnished false invoices as a protection to defendant in making the false statement sworn to by him, thus actively aiding defendant in the commission of perjury, as well as in other violations of law.

The claim of plaintiffs is defeated, therefore, upon the ground of public policy, and not upon the provisions of the statute as such. This same principle defeats the right of recovery upon the counter-claim interposed by defendant. In pleading the counter-claim, the defendant recites the frauds, perjuries, and violations of law and good morals in which he and plaintiffs participated, and thus shows that, according to the ordinary rule, he has forfeited all right to invoke judicial aid to recover back the sums paid by him in furtherance of the illegal business he was engaged in. Section 1550 of the Code, as already said, enacts that money paid for intoxicating liquors sold in violation of chapter 6, tit. 11, of the Code, may be recovered back; but it does not enact that money paid in the course of a transaction violating the provisions of the

pharmacy statute, or involving the commission of repeated perjuries, can be recovered back by one of the wrong-doers. If the right to recover back the sums paid by defendant was based solely upon the provisions of section 1550 of the Code of Iowa, it would be questionable whether this court would be justified in entertaining the counter-claim. This section is a part of the chapter of the Code dealing with the subject of sales of intoxicating liquors, and in the enactment of the chapter the legislature was exercising the police power of the state. While the section authorizes the recovery back of money paid for intoxicating liquors sold contrary to the provisions of the statute, and thus enables the vendee to maintain an action therefor, civil in form, yet it is entirely clear that the section was not enacted for the protection of the vendee. He is in all cases a participant in the violation of the statute, and no ground exists for legislating for his benefit in the particular named. The right to recover back moneys paid for intoxicating liquors illegally sold was evidently conferred upon the vendee as a means of deterring parties from selling liquors contrary to the statute, and as a punishment in case the sales were in fact made. It is one of the provisions of the statute, adopted for the purpose of preventing violations of the statute, or, in other words, it is an aid to the enforcement of one of the police statutes of the state, and the question is whether, under the decision of the supreme court in *Wisconsin* v. *Insurance Co.*, 127 U. S. 265, 8 Sup. Ct. Rep. 1370, this court ought to undertake the enforcement thereof. In the view taken of the facts, it is not necessary to decide this question, as, irrespective thereof, good ground exists for holding that defendant cannot recover upon his counter-claim.

The conclusion reached is that plaintiffs cannot maintain their action for the reasons stated, and judgment thereon must be in favor of defendant at cost of plaintiffs, and that the defendant cannot maintain his counter-claim, and judgment thereon must be in favor of plaintiffs, at cost of defendant.