## FITZSIMONS v. EAGLE BREWING CO.
### No. 20200.

District Court, E. D. Pennsylvania.
Feb. 21, 1939.

Groman & Rapoport, of Allentown, Pa., for plaintiff.

Linn H. Schantz and Claude T. Reno, both of Allentown, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover an unpaid balance of $14,940.01 alleged to be due upon a series of sales of malt syrup by the plaintiff to the defendant. The case was tried to the Court, jury trial having been waived.

The record contains rather more than the amount of perjury customary in liquor cases, but the essential facts are plain enough. They are:

During the Prohibition Era the plaintiff sold the defendant brewing company something over a thousand barrels of malt syrup, on various dates covering a period of a year and three or four months, for prices totaling over $62,000. 90% of the product was sold and delivered to the defendant after its permit to make near beer had been revoked, and was used by the defendant in the illegal manufacture of beer. The plaintiff not only knew that the permit had been revoked and consequently that an illegal use of the malt was intended, but furthered the illegal use by delivering the shipments, on the defendant's request, to various warehouses consigned to dummies, thus placing an additional obstacle in the way of the enforcement officers.

The defendant did not plead illegality. The defense was that its manager (who dealt with the plaintiff) was acting in his own interest, merely as the plaintiff's agent for the distribution of the malt to various customers in the neighborhood. The man-

ager testified that the defendant's officers knew nothing of his operations and that the defendant brewery neither received nor used any of the malt—all of which was patently false. The defendant's testimony does, however, supply the only positive evidence that the plaintiff knew that the defendant's permit had been revoked.

The foregoing general statement of facts, which may be taken as a special finding, is sufficient for a decision of the only question involved, which is whether, since the repeal of the Prohibition Amendment, U.S.C.A.Const. Amend. 21, the plaintiff may recover the price of material intended to be used in making illegal beer, sold in violation of the National Prohibition Law, 27 U.S.C.A. § 1 et seq.

Separate findings of fact and conclusions of law will be found in the answers to the requests.

In dealing with unlawful agreements, courts have frequently used the term "void," meaning simply "unenforceable." There are, of course, many grades and shades of illegality, with varying effects upon the legal rights of the parties to the bargain. In most cases the law merely denies to the parties recourse to its remedies, and the agreement, though unenforceable, is not void in the strict sense of the term. In other cases the effect of the illegality may be such that the position of the parties is for all purposes as though no agreement had ever been made.

The distinction is usually of academic interest only. However, where, as here, there has been a change in the law, so that an agreement unlawful when entered into would have been lawful if it had been made at the time the suit was brought upon it, it is important to know whether it was absolutely void or whether it had a sort of indefinitely suspended legal existence.

■ One type of unlawful bargain which is usually, though not invariably, held to be void in the strict sense is an agreement expressly prohibited by the statute law. (See 12 Amer.Juris., p. 652 et seq.) Whether they are or not depends upon what the law-making body intended the effect of the statute upon the prohibited transactions should be. In this regard, "The distinction between malum in se and malum prohibitum has long since been exploded, * *." Gibbs v. Baltimore Gas Co., 130 U.S. 396, 9 S.Ct. 553, 558, 32 L.Ed. 979. The important consideration is the purpose and object to be accomplished. In fact, this is so much more important than its actual provisions that it has been held that where the intent is plain, an agreement in contravention of a statute is void, although the statute does not say so, but only imposes a penalty upon the offender. Central R. Co. of New Jersey v. U. S. Pipe Line Co., 3 Cir., 1 F.2d 866.

■ A test approved by the courts is stated as follows: "* * * the courts will always look to the language of the statute, the subject-matter, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and, if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and construe the statute accordingly." In re T. H. Bunch Comm. Co., D.C., 180 F. 519, 530. I agree that there is no reason to strain the construction in order to hold the forbidden bargain void (In fact the tendency of the courts is in the other direction.), but there are cases where the plain intent of the statute in the light of the policy upon which it is based leaves no other conclusion possible (Restatement, Contracts, Sec. 598.), and I think that this is such a case.

■ The agreement here involved was in direct violation of the statutory law in force at the time it was made. Its subject was malt intended for use in the manufacture of liquor. The National Prohibition Act provided (U.S.C., T. 27, Ch. 2, Sec. 13, 27 U.S.C.A. § 13), "Any person who shall knowingly sell * * * any extract or sirup for intoxicating beverage purposes, or who shall sell any of the same under circumstances from which the seller might reasonably deduce the intention of the purchaser to use them for such purposes, * * * shall be subject to the penalties provided in section 46 of this chapter." Sec. 39, 27 U.S.C.A., provides, "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this chapter * * *, and no property rights shall exist in any such liquor or property."

Thus, the law not only made the bargain a criminal offense but also abolished ownership and the possibility of transfer of title in its subject matter. A thing which cannot be owned cannot be sold, and a more effective way of rendering an attempted sale absolutely void could hardly be found.

If further evidence of the legislative intention in this regard is needed, it is to be

found in the declared policy of the law and its scheme of enforcement.

The National Prohibition Law was not a regulatory or revenue statute. Its purpose was unmistakably announced in its basic enactment (U.S.C., T. 27, Ch. 2, Sec. 12, 27 U.S.C.A. § 12): "No person shall manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this chapter, and all the provisions of this chapter shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." It will be noted that the use of liquor—the prevention of which was the main objective of the law —was not directly forbidden, and that the entire prohibitory and enforcement machinery was directed against the sale. The means by which the purpose of the law was to be accomplished was the entire abolition of every kind of commercial dealing with liquor, and it seems to me that no other conclusion is possible than that the Act intended, not only to punish, but to render void all agreements of sale which were in direct contravention of its terms and tended to defeat its object.

Even in cases of unlawful bargains, not void but merely unenforceable, the decisions are by no means in agreement as to the effect of the repeal of the law which made them illegal. The weight of authority seems to be that the parties are not thereby restored to their legal remedies. "If a bargain originally illegal still remains executory, a subsequent change of the law, permitting such contract to be made, will not ordinarily justify recovery." Williston, Contracts, Sec. 1758, and cases cited. "The weight of authority, however, sustains the * * * view that, where an agreement is entered into in violation of a statutory or constitutional provision, the subsequent repeal of such provision does not make the agreement valid." 12 Amer.Juris., Contracts, Sec. 165. "A bargain that is illegal when formed does not become legal * * by reason of a change of law, except where the legislature manifests an intention to validate the bargain." Restatement, Contracts, Sec. 609.

The courts of the State of New York have reached a conclusion opposite to the views herein expressed. Those decisions, while not expressly dealing with the question whether or not the contract was void at its inception, necessarily assume that it was not, and treat the matter of illegality as a defense which the repeal of the statute has taken away. In view of what seems to me to have been the plain purpose and intent of the National Prohibition Law, I am unable to accept the view that this contract was anything but wholly void from its inception.

Judgment may be entered for the defendant.