### Hunter, et al. v. Big Four Auto Company.

(Decided February 16, 1915.)

### Appeal from Warren Circuit Court.

1. Contracts—Prohibited by Statute Not Enforcible.—An **individual** partnership doing business under an assumed name, without complying with the requirements of Section 199b of the Kentucky Statutes, which provides that no persons shall carry on or transact any business under an assumed name or name other than the real name of the individuals conducting the business, unless they shall file a certificate setting forth the names of the parties and also the assumed name, and which fixes a penalty for violation of the Statute, could not recover on a contract when the Statute

was interposed as a defense, although the defendant had received and retained property under the contract.

2.  Business—Carrying On Under Assumed Name.—Under Section 199b of the Kentucky Statutes individuals cannot lawfully carry on business under an assumed name without observing the requirements of this Section, and unless the statute is observed the persons carrying on the business under the assumed name cannot enforce rights arising under contracts made in the conduct of their business.

T. W. & R. C. P. Thomas for appellants.

SIMS & RODES for appellees.

Opinion of the Court by Judge Carroll—Reversing.

This suit was brought by P. L. Patterson, Joe Lucas, James Massey, and S. A. Kelly, partners, doing business under the assumed name of the "Big Four Auto Company," against the appellants, as defendants, to recover $284, the amount of two notes executed by the defendants to the Big Four Auto Company, growing out of some transactions between the parties about an automobile.

The defendants, for the purpose of defeating the action, pleaded and relied on Section 199b of the Kentucky Statutes, the first sub-section of which reads as follows:

"No person or persons shall hereafter carry on or conduct or transact business in this State under an assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct or transact or intend to conduct or transact such business, a certificate setting forth the name under which said business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons owning, conducting or transacting the same, with the postoffice address or addresses of said person or persons. Said certificate shall be executed and duly acknowledged by the person or persons so conducting, or intending to conduct, said business."

Sub-sections two and three relate to the certificate. Sub-section four exempts corporations and parnerships

from the application of the statute, with the proviso that "such partnership name or designation shall include the true real name of at least one of such persons transacting business."

Sub-section five, prescribing a penalty for the violation of the statute, reads: "Any person or persons carrying on, conducting or transacting business as aforesaid, who shall fail to comply with the provisions of this act, shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned in the county jail not less than ten days nor more than thirty days, or both so fined and imprisoned, and each day any person or persons continue to conduct business in violation of this act shall be deemed a separate offense."

The trial court sustained a general demurrer to this answer, and the defendants appeal.

This act does not in terms say that it shall be "unlawful" for any person to carry on or transact business under an assumed name, but it is manifest that it was the purpose of the act to make it unlawful, or else the penalty prescribed by sub-section five would not have been imposed. In view of the fact that this section expressly provides that any person who fails to comply with the provisions of the act shall be guilty of a misdemeanor and subject to a fine and imprisonment, it would be disregarding the purpose of the act, when considered as a whole, to say that the Legislature did not intend to make it unlawful to transact business without observing the requirements of the act. If the Legislature had said in so many words in sub-section one that "it shall be unlawful for any person or persons to carry on or transact business under an assumed name," it would not have made any plainer the fact that the Legislature intended to make this method of transacting business unlawful.

It being then the intention of the Legislature to make the transaction of business under an assumed name unlawful, unless the requirements of the statute are observed, the only remaining question is, does the fact that the Legislature has made the doing of a thing unlawful, prohibit the person engaged in the unlawful thing from maintaining an action to enforce a contract right wholly created in the doing of this unlawful and forbidden thing?

In Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky., 504, a question so similar to the one here presented that no distinction can be made between them was before the court, and in the course of the opinion it was said: "The statute does not provide that contracts entered into before it has been complied with shall be void or non-enforcible, nor does it use any language in reference to the contract; but, when a statute makes it unlawful to do business under certain conditions, it seems to necessarily and logically follow that the doing of the business under the prohibited conditions is in itself unlawful. When the doing of the act is made unlawful, there is no reason why the statute should also declare that contracts made in violation of it should also be unlawful. When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts. Courts are established to afford remedies to litigants who seek relief growing out of lawful transactions, and not to aid those who would invoke their assistance to enforce contracts made in violation of law. Their chief purpose is to secure the observance of laws enacted for the safety and protection of life and property, and the general well-being of the people, and it would be a startling departure from this purpose if they should also give relief to parties who were seeking to enforce contracts made in violation of law. Such a course of procedure would be a perversion of justice and convert the courts into instruments to aid law-breakers in place of punishing them."

Again, in Oliver Co. v. Louisville Realty Co., 156 Ky., 628, the question was thoroughly considered and the ruling in the Chatterson case adopted and approved. And it seems to us that these decisions control this case.

In Cashin v. Pliter, 168 Mich., 386, 28 A. & E. Ann. Cases, 697, the Supreme Court of Michigan had before it a question in all respects similar to the one here involved. The Michigan statute before the court prohibited the transaction of business under an assumed name or any other than the real name of the individual or owner conducting same, unless a certificate was filed such as is provided for in our act. It does not appear from the opinion that the act expressly made it unlawful to conduct the business without filing the required certificate, but it did make the violation of the act a misdemeanor punishable by fine and imprisonment.

It further appears that Cashin and certain other individuals were doing business in the firm name of Flint Construction & Realty Co., and that in this name they entered into a contract with Pliter to build him a house for an agreed sum. That after they had completed the house according to contract, Pliter refused to pay a balance due, whereupon suit was brought against him. His defense was that the plaintiffs were doing business in violation of the statute, and, therefore, could not recover. In that case, as in this, the argument was made on behalf of the plaintiffs that the act was a penal statute, not implying or intending any other punishment or loss to those violating it than that expressly provided by the fine and imprisonment. That it had no application in a case where the defendant knew who the members of the concern were with which he dealt, and that as they had fully performed the contract, and he had received the benefits thereof, they were entitled to recover the amount sued for. But the court, rejecting this view and denying a recovery, said that the act was founded on public policy, came within the police power of the State, and was intended to protect the public from imposition and fraud. That the labor and material was furnished under an illegal contract by virtue of which there could be no recovery.

The case of Gay v. Seibold, 97 N. Y., 472, 49 Am. Rep., 533, is relied on by counsel for the appellees as taking a different view of this question from that announced by this court and the Michigan court, but an examination of this case shows that the court, in holding a contract that it was claimed violated a statute of New York, in some particulars like ours, enforcible, put its decision distinctly on the ground that the statute was not intended to be applicable to a state of case such as was presented to the court, saying:

"This case is not, therefore, within the purpose or intention of the statute, and such a transaction is not one of the mischiefs sought to be remedied by the statute. Therefore, although this transaction should be held to be within the letter of the statute, it is clearly not within the purpose and intention of the statute, and hence it is outside of the statute. It is a rule peculiarly applicable to the construction of penal statutes that a thing within the letter of a statute is not within the statute unless within the intention thereof; and so, too, in the construction of

remedial statutes, it is generally held that a thing within the intention is within the statute, though not within the letter.''

The case before us, however, comes not only directly within the letter, but directly within the intention of the statute. The statute was intended to prohibit exactly what the plaintiffs were doing, unless they filed the certificate required. The Legislature undoubtedly had the power to enact this statute and prescribe a penalty for its violation. And when the Legislature, within its authority, enacts a law making it a punishable offense to do certain things, it may be considered as a closed question that this court will not lend such aid to the persons doing the prohibited things as will enable them to violate the law with impunity.

It is probable that a rule like this may, in some instances, work a hardship by permitting one person to get the benefit of another person's labor, service or property without compensation. But, as said in Oliver Co. v. Louisville Realty Co, *supra,* ''the fact that enforcement of the statute may work hardships on corporations that fail to obey it cannot, without ignoring the legislative intent, be allowed to defeat the object sought to be accomplished by the enactment of the law. Every person who violates the law puts himself in the attitude of being required to pay the penalty for the infraction; but, although the delinquency may subject him to punishments, civil or criminal, this of course furnishes no reason why the statute should not be enforced. The individual who violates a penal statute may expect to pay the penalty, and so a corporation that violates the civil features of a statute is not in any position to complain if it, too, must pay the penalty.''

Also, in Cashin v. Pliter, *supra,* the court, in answer to the argument that the defendants should be estopped from relying on the statute to defeat the collection of a just debt, said: ''In behalf of the plaintiff it is urged that, the contract having been performed and labor and material having been furnished, of which defendant retains the benefit, recovery can be had therefor under the common counts, on an implied promise to pay for the same what they are reasonably worth. But they were furnished under an illegal express contract, by virtue of which there can be no recovery.  *  *  *  In such a case, the doctrine of estoppel cannot be invoked by the

plaintiff; but the law leaves the parties where it finds them and refuses relief. It recognizes the defense of illegality, not as a protection to the defendant, but as a disability to the plaintiff."

For the reasons stated the judgment is reversed, with directions to overrule the demurrer and for proceedings not inconsistent with this opinion.