## Somerset Stave & Lumber Company v. Brown.

(Decided January 12, 1917.)

### Appeal from Harlan Circuit Court.

1. Corporations—Change of Ownership of Stock.—The fact that the ownership of the stock of a corporation changed, did not affect the corporation's existence, or the corporation's right to do business as a corporation.

2. Evidence—Burden of Proof.—The party relying upon a defense has the burden of establishing it by proof; otherwise he must fail therein.

J. S. FORESTER for appellant.

CLAY & CARTER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

By a written contract dated September 21, 1912, the appellee, H. C. Brown, agreed to manufacture into sawed whiskey and oil staves for the appellant, the Somerset Stave & Lumber Company, a certain boundary of white oak timber in Bell county, Ky., about nine miles from Miracle. The contract further provided that the Somerset Stave & Lumber Company was to furnish Brown a stave saw rig complete, at Miracle, for the purpose of sawing the staves, Brown to furnish his own power and set up and operate the mill at his own expense.

The contract further provided that the Somerset Stave & Lumber Company should advance Brown sufficient money to enable him to set up and operate the mill and deliver the staves to the railroad at Miracle, and was to pay Brown $57.50 per thousand for the prime whiskey staves of certain specified sizes. All the second class and oil staves manufactured from said timber were to be sold at the best advantage to both parties, and the amount realized from such sales to be credited to Brown's account.

The Somerset Stave & Lumber Company furnished the stave rig complete, at Miracle, as contemplated by the contract. Shortly after the contract was made, J. S. Cooper and C. L. Tarter, the stockholders of the Somerset Stave & Lumber Company organized a partnership business under the trade name of the Crescent Stave Company, which bought the stock and property of the Somerset Stave & Lumber Company, including its rights under the contract with Brown.

On March 24, 1914, the Somerset Stave & Lumber Company, the Crescent Stave Company, and J. S. Cooper and C. L. Tarter filed their petition, alleging that they had furnished to Brown, and upon his order and request, pursuant to said contract, cash amounting to $3,092.24, and had received from the sale of 82,509 staves furnished to them by Brown the sum of $2,464.77, leaving a balance of $627.47 due the plaintiffs.

By his answer and counter-claim, Brown admitted he had received in cash, $3,049.00; and, by way of counter-claim, he claimed: (1) that he had delivered 105,-505 whiskey staves of the value of $3,153.16; (2) that he had delivered 1,159 No. 1 (extra) staves at $49.50 per thousand, aggregating $57.37; (3) that he had delivered 2,192 (extra) oil staves at $17.00 per thousand, aggre-

gating $37.26; (4) that he had worked four days for the plaintiffs at $3.00 per day, aggregating $12.00; and, (5) that he had furnished plaintiffs with bolts of the cash value of $5.00; making a total claimed credit of $3,264.79, and leaving a balance of $215.79 due him on his counter-claim.

Upon the motion of the defendant, the action was transferred to the equity docket. Fourteen depositions were taken, containing 29 exhibits, made up principally of accounts of sales of lumber and bills paid by one or other of the parties.

It will thus be seen that the plaintiffs sued for a balance of $627.47, while the defendant counter-claimed for a balance due him of $215.79.

When the case came on for hearing, the court entered a judgment reciting that as neither the plaintiffs nor the defendant had shown themselves entitled to the relief sought, it dismissed the petition and the counter-claim, and gave Brown judgment for his costs. From that judgment the plaintiffs prosecute this appeal. The judgment is *prima facie* erroneous since it decided neither the case presented by the petition nor the case shown by the counter-claim.

1. By an amended answer, Brown alleged that Cooper and Tarter had performed the acts stated in the petition as partners under the name and style of the Crescent Stave Company, without having filed in the office of the county court clerk of Bell county, or any other county. a certificate or writing setting forth the name under which said business was conducted or transacted, accompanied by the true or real names of the partners, Cooper and Tarter, as is required by section 199b of the Kentucky Statutes; and he relied upon that failure as a bar to their right to maintain this action in the name of the Crescent Stave Company.

The reply to the amended answer traversed the material allegations of that pleading, and admitted that about February 19, 1913, Cooper and Tarter bought all the stock of the Somerset Stave & Lumber Company, and alleged that they had carried out the contract in the name of said corporation.

The reply further alleged that the partnership firm known as the Crescent Stave Company, had been organized by Cooper and Tarter on February 19, 1913, for the purpose of carrying on business in Pulaski, Perry,

Harlan and other counties, with its principal place of business at Harlan, in Harlan county, Ky., and that on said day they had made out the certificate required by section 199b of the Kentucky Statutes and had executed and delivered the same to the county clerk of Harlan county, who had duly filed it in his office on that day. And, the reply further alleged that the contract was carried out by the plaintiffs, in every respect, in the name of the Somerset Stave & Lumber Company, which was in active existence at all times from the date of said contract until after the transactions with the defendant, Brown, were closed in 1913.

The rejoinder traversed the reply.

Appellee relies upon Hunter v. Big Four Auto Co., 162 Ky. 778, as authority for his position that the Crescent Stave Company cannot maintain this suit. The statute has, however, no application to this case. The contract was made on September 21, 1912, and this action was brought jointly in the name of the Somerset Stave & Lumber Company, the Crescent Stave Company, and J. S. Cooper and C. L. Tarter, as plaintiffs.

The proof shows that the Somerset Stave & Lumber Company remained in existence throughout the period covered by the execution of this contract, and that the contract was made and executed by it. The fact that the ownership of its stock changed did not affect its corporate existence or its rights under the contract. The plea was properly disregarded.

2.  Upon the merits, the appellant states its account against Brown, as follows:

| | |
|---|---|
| To cash furnished | $3,092.24 |
| Credited by proceeds of 7 car loads, aggregating 82,509 staves | 2,464.77 |
| Balance claimed by appellant | $627.47 |

Brown, however, states the account, as follows:

| | | |
|---|---|---|
| To cash received | | $3,049.00 |
| (1) By 109,505 staves, as per contract | $3,153.16 | |
| (2) By 1,159 other No. 1 staves | 57.37 | |
| (3) By 2,192 other oil staves | 37.26 | |
| (4) By 4 days labor ($3.00) | 12.00 | |
| (5) By bolts furnished | 5.00 | |
| | | $3,264.79 |
| Balance claimed by Brown | | $215.79 |

The disputed items are as follows:

A. Overcharges of cash.

B. Number of staves; 82,509 or 105,505?

C. 2nd and 3rd items of counter-claim..........................  $94.63

D. The 4th and 5th items, aggregating........................  17.00

    Of these in their order.

A.   The first alleged overcharge in cash relates to $59.65 paid by appellants to Nunely, Brown's sawyer. While the payment is not disputed, Brown insists he owed Nunely only $39.70, and the excess of $19.95 was unwarranted and is not a proper charge against him. Appellants concede that a part of this $19.95 was expended by Nunely on a trip undertaken, in part at least, upon their business. In the absence of any proof as to what part was so expended, and in view of Brown's explicit account showing his indebtedness to Nunely, and his seven payments thereon, this claim by Brown will be sustained.

The second item is $13.30, was paid by appellants for a covering for their saw mill, and is conceded in the brief to be an improper charge against Brown.

The same ruling is made as to the third item of seventy-five cents.

The fourth item of $9.24 cash charged against Brown is not sustained by the proof. Cain says this money was furnished to Brown, and Brown denies it. The burden being upon the plaintiffs to establish the charge, it must be denied under the proof.

Under this head Brown is given an aggregate credit of $43.24.

B. The question as to the number of staves delivered by Brown is more difficult of solution. Under the contract appellants bought the first class staves, but all other staves were to be sold and credited to Brown's account. The appellant bought and paid for three car loads of No. 1 staves, and Brown loaded and shipped four car loads of second class staves which were sold in Chicago, New York and Cincinnati. There is no claim that the purchase price of these four car loads was not credited, in full, to Brown's account; that is shown and conceded.

The difference arises over 22,996 staves which Brown insists he delivered at Miracle, in excess of the quantity credited by appellants. While Brown's statement of the number of staves delivered at Miracle is,

in the main, sustained by the testimony of his brother, both statements are, in a measure, based upon estimates. The culls were arbitrarily estimated at 4,000. But, if it should be conceded that Brown's gross estimate of 109,505 staves, less 4,000 culls, is the correct number of staves delivered by him at Miracle, there is no proof that any portion of these disputed 22,996 staves were merchantable, or that they were received or sold by appellants. On the contrary, the proof shows they re-ecived only the staves for which they have given Brown credit. Davis, a witness for Brown, testified that there were 15,000 culls still remaining on the mill yard at the time he testified.

In short, the burden is upon Brown to sustain his claim that appellants received these 22,996 disputed staves, or that they were merchantable staves called for by the contract, and such as appellants were required to accept. But this he has wholly failed to show. Moreover, since all second class staves were to be sold and credited to Brown's account, it was his duty equally with appellants, to see that they were sold to the best advantage. The contract did not require the appellants to sell these second class staves; and Brown fulfilled his own obligation in that respect, by loading and shipping three of the four car loads of second class staves, above referred to.

For failure to sustain his claim by proof, Brown will not be allowed any credit upon this item.

C. The second and third items aggregating $94.63, are claimed as credits by Brown for extra staves sold by him to appellants, and not included in the credit of 82,509 staves. The proof, however, clearly shows that these staves had been sold by the Wilsons and Miracle to Brown, but that upon Brown's refusal or failure to take them, they were sold to the appellants, and that they have paid the Wilsons and Miracle for them. Brown, therefore, is not entitled to any credit upon these items of his counter-claim.

D. The fourth and fifth items, aggregating $17.00, are conceded by appellants, and will be allowed.

The appellee will, therefore, be allowed the following credits upon his counter-claim:

A.  Cash overcharges ........................................................$43.24
D.  Items 4 and 5, *supra*........................................... 17.00

Total credits ...............................................................$60.24

Deducting this sum of $60.24 from $627.47, there remains $567.23, for which appellants may have judgment.

Judgment reversed with instructions to enter a judgment as above indicated.