## BRISTOL et al. v. CHAS. F. NOBLE OIL & GAS CO. (No. 2484.)

(Court of Civil Appeals of Texas. Amarillo. April 15, 1925. On Reinstatement of Appeal, May 20, 1925. Rehearing Denied June 10, 1925.)

**1. Appeal and error ⬚759—Appellants' failure to bring assignments of error into brief required adverse disposition of appeal, in absence of "fundamental error."**

Appellants' failure to bring assignments of error into brief, as required by rules of Courts of Civil Appeals, rule 32, and merely setting forth propositions not shown to relate to any assignments of error, required disposition of appeal adversely to appellants, in absence of fundamental error in record; "fundamental error" being error apparent of record.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fundamental Error.]

On Reinstatement of Appeal.

**2. Names ⬚10—Failure to file certificate by parties doing business under assumed name made their contract void.**

Parties doing business under assumed name, without having filed certificate required by Acts 37th Leg. (1921) c. 73, §§ 1–7 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5950½–5950½d, and Vernon's Ann. Pen. Code Supp. 1922, art.

1007c), were precluded from recovering on their contract for sale of gas, and contract was void.

**3. Names ⬚10—Operating single gas well and sale of gas to single purchaser held "transacting business" within assumed name statute.**

Operating of single gas well under oil and gas lease by parties operating under assumed name, and sale of gas therefrom to single purchaser, was "transacting business" within Acts 37th Leg. (1921) c. 73, §§ 1–7 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5950½–5950½d, and Vernon's Ann. Pen. Code Supp. 1922, art. 1007c), requiring filing of certificate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transacting Business.]

**4. Contracts ⬚137(1)—Parties not precluded from recovering, if they can establish case without aid of illegal transaction.**

Parties are not precluded from recovering on their contracts, if they can establish their case without aid of illegal transaction.

**5. Names ⬚10—Action on contract, executed by plaintiffs under assumed name without filing of certificate, held not maintainable on theory that they could establish case without aid of illegal transaction.**

Where contract for sale of gas by plaintiffs operating under assumed name without filing certificate required by Acts 37th Leg. (1921) c. 73, §§ 1–7 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5950½–5950½d, and Vernon's Ann. Pen. Code Supp. 1922, art. 1007c), was void and unenforceable, held that contract could not be enforced on theory that plaintiffs could establish case without aid of illegal transaction.

Appeal from Wichita County Court; Guy Rogers, Judge.

Action by W. E. Bristol and others against the Chas. F. Noble Oil & Gas Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellants.

Bonner, Bonner & Sanford, of Wichita Falls, for appellee.

RANDOLPH, J. This suit was filed in the county court at law of Wichita county, Tex., by appellants against appellee. The trial court rendered judgment in favor of appellee, and this appeal is from that judgment.

[1] The appellants have not brought forward in their brief any assignments of error, as required by rule 32 for the Courts of Civil Appeals, which is as follows:

"The brief shall contain verbatim copies of such of the assignments of error filed in the trial court and reproduced in the transcript as are relied on in the appeal, but their original numbering may be disregarded. They shall be set out in the back of the brief, but if desired, they may immediately follow the statement of facts."

In the case at bar, appellants have filed their brief containing propositions which do not show that they relate to or are germane to any assignment of error, and no assignments are set out in the brief in the "back, front, or middle thereof." The failure to bring the assignments forward in the brief disposes of the appeal adversely to appellants, unless fundamental error is shown in the record. Jaffe v. Deckard (Tex. Civ. App.) 261 S. W. 398; Midland Rubber Co. v. Waldman (Tex. Civ. App.) 257 S. W. 929; Green v. Shamburger (Tex. Civ. App.) 243 S. W. 601; First State Bank & Trust Co. v. Blum (Tex. Civ. App.) 239 S. W. 1035.

A fundamental error is an error that is apparent of record, and such error is defined by the Supreme Court in the case of Houston Oil Co. v. Kimball, 103 Tex. 104, 122 S. W. 537.

"The language, 'apparent upon the face of the record,' indicates that it is to be seen upon looking at the face of the record, that is, the assignment itself, the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily. * * * If we take the first assignment in its terms there is not apparent upon the face of that record any one of the things pointed out in the propositions under it. By an examination of the record it might be found that the facts existed as claimed in the propositions, but they are not manifest and not evident, not obvious, without an examination and weighing of the evidence to determine whether or not the assignment is well taken."

There being no such error in the record, we dismiss the appeal in this case.

### On Reinstatement of Appeal.

This suit was filed by appellants against appellee in the county court at law of Wichita county, Tex., to recover money alleged to be due upon a contract of sale, which suit was based upon allegations that appellants were the owners of an oil and gas lease in Wichita county, which contract, as alleged in plaintiffs' petition, provided for the sale of the casing-head gas from an oil and gas lease owned and operated by them, for a stipulated price per 1,000 cubic feet, based on the gasoline content of such gas.

Appellants allege in their petition that the appellee was by the terms of said contract required to make tests every three months to ascertain such content, and that one such test was due to be made in October, 1922, and another in January, 1923, but at the time these tests were required to be made appellee's testing machinery was not in shape to make an accurate test; that J. R. Auers was appellee's agent, actual or apparent, and that they made a contract with him, as such agent, whereby, instead of making the tests due in October, 1922, and January, 1923, appellee was to make a test as soon as it procured an accurate testing machine, and that such tests would be as having been made at the proper time in October, 1922, and would furnish a means of calculating payments for the months of October, November, and December, 1922, and January, February, and March, 1923.

Appellants further allege that, when the test was finally made, it showed a gasoline content of 12.4 gallons per 1,000 cubic feet, whereas, payments for gas made to appellants for the months of October, November, and December, 1922, and January, 1923, were based on a lower content, alleged that instead of the $581 which they have received for the gas, they should have been paid $1,121.33, under their agreement with Auers, and, further, that an accurate test of said lease would have shown it to produce gasoline with a content of 12.4 gallons per 1,000 cubic feet, and that appellee, by taking such gasoline, was obligated to pay appellants at that rate during the period of time above indicated.

The appellee filed a special plea in bar of appellants' action, that appellants had been doing business under an assumed name, to wit: The name of "Eighty-Four Syndicate"; that the only contract had between appellants and appellee was a division order made in the name of the "Eighty-Four Syndicate"; and that in all transactions in connection with said lease had by appellants and appellee, appellants were acting under an assumed name, to wit: The name of "Eighty-Four Syndicate"; that appellants had never filed the assumed name certificate required by chapter 73, Laws of the 37th Legislature (1921) page 142. In addition, appellee pleaded general and special exceptions, general denial, and denial under oath of the agency of Auers, and further, that it had made all payments for the casing-head gas taken by it.

[2] The case was tried before a jury, and upon issues submitted to them by the trial court, they returned answers favorable to appellants' contentions. The trial court had taken under advisement during the trial of the case, appellee's plea in bar, and sustained said plea and rendered judgment for appellee without reference to the verdict of the jury upon the issues so decided by them, and this judgment is now presented to us for review. This suit was originally styled "Eighty-Four Syndicate v. Chas. F. Noble Oil & Gas Company" and the parties hereto have agreed that, at all times mentioned in plaintiff's petition, the appellants were partners and operating under the same name and style of "Eighty-Four Syndicate."

The Assumed Name Act, passed by the

Thirty-Seventh Legislature, is in words as follows:

"Sec. 1. No person or persons shall hereafter carry on or conduct or transact business in this state under any assumed name or under any designation, name, style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact or intend to conduct or transact such business, a certificate setting forth the name under which such business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the post office address or the addresses of said person or persons. Said certificate shall be executed and duly acknowledged by the person or persons so conducting or intending to conduct said business in the manner now provided for acknowledgment of conveyance of real estate.

"Sec. 2. Persons now owning or conducting such business under an assumed name or under any such designation referred to in section 1, shall file such certificate as hereinbefore prescribed, within thirty days after this act shall take effect, and persons hereinafter owning, conducting or transacting business aforesaid shall before commencing said business file such certificate in the manner hereinbefore prescribed.

"Sec. 3. Whenever there is a change in ownership of any business operated under any such assumed name as set out in section 1 hereof, the person or persons withdrawing from said business or disposing of their interest therein, shall file in the office of the clerk of the county or counties in which such business is being conducted and has a place or places of business, a certificate setting forth the fact of such withdrawal from or disposition of interest in such business; and until he has filed such certificate he shall remain liable for all debts incurred in the operation of said business, which certificate shall be executed and duly acknowledged by the person or persons so withdrawing from or selling their interest in said business in the manner now provided for acknowledgment of conveyance of real estate.

"Sec. 4. The several county clerks of this state shall keep an alphabetical index of all persons filing certificates, provided for herein, and for the indexing and filing of such certificates they shall receive a fee of one dollar. A copy of such certificates duly certified to by the county clerk in whose office the same shall be filed shall be presumptive evidence in all courts of law in this state of the facts therein contained.

"Sec. 5. This section shall in no way affect or apply to any corporation duly organized under the laws of this state or to any corporation organization under the laws of any other state and lawfully doing business in this state.

"Sec. 6. Any person or persons owning, carrying on or conducting or transacting business aforesaid, who shall fail to comply with the provisions of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, and each day any person or persons shall violate any provisions of this act shall be deemed a separate offense.

"Sec. 7. The fact that there is now no law providing for the registration of the names of persons doing business under assumed or fictitious names, and that the absence of such law impairs the stability of credits in the state, creates an emergency and imperative public necessity requiring that the constitutional rule that bills shall be read upon the three several days shall be suspended, and it is hereby suspended and this act shall take effect from and after its passage, and it is so enacted."

The purpose of the Legislature in passing this act, as indicated in the emergency clause, was to prevent the impairment of credits in this state, and carries with it a penalty for its enforcement. This act is carried into Vernon's Ann. Civ. St. Supp. 1922, and numbered 5950½, 5950½a, 5950½b, 5950½c and 5950½d, and section 6 of the act is left out of their civil statutes, but is carried into their publication of the criminal statutes as article 1007c, p. 2272, Penal Code of Texas 1922.

The appellants attack the judgment of the trial court in sustaining the appellee's plea in bar upon the following grounds: (1) Under a proper construction of the statute, appellants are not denied the right to recover upon contracts made in the assumed name; (2) it appearing that the appellants simply owned an oil and gas lease with one well on it, and that the only alleged business transaction was the operation of said lease, appellants were not conducting a "business" within the terms of the assumed name statute; (3) even if appellants were not entitled to recover upon the contract they made with Auers whereby, when the new machine of the appellee should come and a test could be made, the actual content shown by such test would be effective as of date October 1st, because of noncompliance with the assumed name statute, appellants were nevertheless entitled to recover upon the following theory. The undisputed evidence showed that the appellee had made a contract with Crenshaw & Cowden, whereby it was permitted to take the casing-head gas, and whereby it bound itself to pay the owner of said lease a royalty, based upon accurate tests; and the undisputed evidence further showed that in October of 1922, when its test was due, and in January, 1923, when another test was due, no accurate test could be made; and the jury having found, and the undisputed evidence showing that an accurate test in October would have shown 10.5 gallons instead of 6, upon which latter basis appellants were paid; and the jury having found the payments on the basis of 6 gallons per 1,000 cubic feet were not tendered nor accepted as payments in full, and was thus shown by the undisputed evidence, without any reference being made, either proper

ot necessary, to the fact that the appellants were conducting a business under an assumed name—that they, as owners of the property, were entitled to receive, under the original Crenshaw & Cowden contract, the value of the casing-head gas taken, based upon accurate tests.

The question presented to us here, as applicable to the particular statute set out above, has been passed on in this state, only by the Court of Civil Appeals at El Paso. Loving v. Place, 266 S. W. 231. The decisions in the other states considering statutes containing substantially similar provisions are conflicting, but the great weight of authority is with the proposition that the party transacting business under assumed name, in violation of the statute requiring the filing of the certificate set out in said statute, is not only subject to a penalty, but that contracts made during such period of noncompliance, when asserted by the offending party, are unenforceable by him, and that a statute, which prohibits such transactions, carries with it by implication, in addition to the penalty provided therein, a prohibition against such party bringing or maintaining a suit to enforce his claim for compensation on said transaction.

The Supreme Court of Oregon, in the case of Uhlmann v. Kin Daw, 97 Or. 681, 193 P. 435, has classified the cases considering the various "assumed name" statutes, in those states where such statutes are in existence, into three groups or classifications. The second group is the one we shall consider here, as the decisions of that group involve the construction of statutes substantially similar in their terms and provisions to our statute above quoted, and we accept the classification made by said court as being substantially correct. In such second group the statutes under consideration provide that the failure to file a certificate makes the party so failing guilty of a misdemeanor, and the only penalty prescribed is fine or imprisonment, and there is no provision that any contract or transaction is to be void, or that a suit cannot be maintained upon such cause of action. The leading case upon the question is one by the Supreme Court of Michigan (Cashin v. Pliter, 168 Mich. 386, 134 N. W. 482, Ann. Cas. 1913C, 697), and from which we make free quotation because of the cogency of the reasoning—holds as follows:

"Parties doing business with those acting under an assumed name, whether they buy or sell, have a right, under the law, to know who they are, and who to hold responsible, in case the question of damages for failure to perform or breach of warranty should arise.

"The general rule is well settled that, where statutes enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void. Pollock's Principles of Con-

tract, 293; Drury v. Defontain, 1 Taunt. 136; Meyers v. Meinrath, 101 Mass. 363, 3 Am. Rep. 368; Lyons v. Armstrong, 6 Ver. 219; Harris v. Runnels, 12 How. 79, 13 L. Ed. 901; Gibbs v. Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, and cases cited. This rule has been recognized and adopted in Shattuck v. Watson, 164 Mich. 167, 129 N. W. 196, wherein the following language is used: 'It is a well-settled principle of law that all contracts which are founded on an act prohibited by statute under penalty are void, although not expressly declared to be.'

"It is urged that the Shattuck Case can be distinguished from the one at bar in the particular that the former is directly aimed at a contract which the law prohibits in the interest of public health and safety; the decision being founded on public policy, to protect citizens against unlicensed and unskilled pharmacists and resultant hazard to human life. It is true that the object of the act in question is not to safeguard human life or health; but both laws are founded on public policy. They are acts of the same class, coming within the police power of the state; one being to protect the public health, and the other to protect the public from imposition and fraud. Each prohibits certain acts, and each makes the violation a criminal offense punishable by fine and imprisonment.

"In interpreting the statute under consideration, it can be contended with reason, and in harmony with former decisions of this court construing acts somewhat analogous, we are inclined to the view that it is not the intent to render a contract made in violation of this act absolutely null and void for every purpose. While, as heretofore stated, the general rule is well settled that a contract made in violation of a statute is void when the statute is otherwise silent, and contains nothing from which the contrary is to be inferred, nevertheless the diversity of legislation gives rise to varying exceptions to this rule; and before applying it in full the court should carefully scrutinize the particular statute under advisement, for the purpose of ascertaining, from the subject-matter and language used, the object for which it was enacted and the intent of its makers, to the end that such intent may be rendered effectual and the indicated purpose accomplished. As this act involves purely business transactions, and affects only money interests, we think it should be construed as rendering contracts made in violation of it unlawful and unenforceable at the instance of the offending party only, but not as designed to take away the rights of innocent parties who may have dealt with the offenders in ignorance of their having violated the statute."

The Cashin Case has been approved and followed by the Michigan Supreme Court in the case of Maurer v. Greening Nursery Co., 199 Mich. 522, 165 N. W. 861, 168 N. W. 448. The rule as laid down in the Cashin Case, supra, is upheld in the following states: Kentucky, in Hunter v. Big Four Auto Co., 162 Ky. 778, 173 S. W. 120, L. R. A. 1915D, 987; Indiana, Horning v. McGill, 188 Ind. 332, 116 N. E. 303; North Carolina, Courtney v. Park-

cr, 173 N. C. 479, 92 S. E. 324. The rule in Texas, applicable to transactions and contracts made in violation of a particular statute, is first enunciated in the case of Hunt v. Robinson, 1 Tex. 749, and, as a full statement of the rule and its application can best be made by quotation from Justice Lipscomb's opinion, we make such quotation. In that case our Supreme Court, in passing on the validity of a sale of land where the act of Congress of Coahuila and Texas forbids the alienation of certain lands as follows: " 'No new settler, Mexican or foreigner, shall, under any title or pretense, sell or alienate the land or water that falls to his share, until after six years from the time of taking possession' (Laws of Coahuila and Texas, 191)" —holds that the contract for the sale of the land, in face of such prohibition, is illegal and void. In making this holding, the Supreme Court also held that:

It is "a rule of universal application, that to undertake to do an act forbidden by the law of the place where it is to be done, is an invalid agreement, and imposes no legal obligation. There is a moral obligation, in the absence of penalty, to obey the law. Courts are organized under the law and are required to administer it; and, it would seem to be an anomaly were they so far to sanction its violation, as to give effect to a contract forbidden by the very law that they are bound to respect and enforce. * * * The principle to be deduced from the authority last cited [Chitty on Contracts, 3d Am. Ed.] is, that for certain causes, the enforcement of a contract may be suspended, without invalidating the contract; and, further, that if impediments to contracting exist at the time it is entered into, it invalidates the contract, even after the removal of the impediment.

"It seems that a distinction was once made in the English courts, when the law only forbid the doing an act, and when it imposed a penalty for doing it. A contract in violation of the first was not valid, whilst the latter did not destroy the obligation by contracting to do the act forbidden by law, under a penalty. But the current of authority is now destructive of any such distinction, holding all contracts against law alike invalid. Chitty on Cont. 230, 231; 5 Term Rep. 242; 5 B. & A. 335. My object in referring to the last authorities is to show that in the English courts there is no longer any distinction between a law merely forbidding an act, and one forbidden under a penalty. The same authority will show that the distinction once attempted between things mala prohibita and mala in se, cannot be sustained; that either invalidates a contract."

While the case is distinguished from the one he is considering, Roberson v. Sterrett, 96 Tex. 183, 71 S. W. 385, 73 S. W. 2, Chief Justice Gaines recognizes the law to be as stated in Hunt v. Robinson, supra. The rule laid down in Brown v. Simpson's Heirs, 67 Tex. 228, 2 S. W. 644; Holmes v. Johns, 56 Tex. 49, and authorities therein cited, approves the rule laid down in the Hunt Case.

So far as our investigation discloses, the case of Loving v. Place, supra, by the El Paso court is the only case in Texas applying the rule in the Hunt-Robinson Case to the statute here invoked. That court holds that—

"There is no doubt that the Legislature by the statutes intended to and did make it unlawful to transact business under an assumed name, and, being unlawful to do it, there is no reason why the courts should lend their aid to the enforcement of a contract made in violation of law. Hunter et al. v. Patterson et al., 162 Ky. 769, 173 S. W. 120, L. R. A. 1915D, 987, 988, should rule this case. * * *"

Mr. Page, in his Law of Contracts, vol. 2, p. 1178, § 682, lays down the rule to be that where the act in question is forbidden by the written law, such prohibition may be either express or implied, and that contracts to perform such acts will be unenforceable.

6. R. C. p. 701. "When a statute intends to prohibit an act, it must be held that its violation is illegal without regard to the reason of the inhibition, of the morality or immorality of the act; and that is so without regard to the ignorance of the parties as to the prohibiting statute."

We therefore hold that the appellants were prohibited from enforcing their demand by suit, and also that the transaction of the sale of the gas, when asserted by the offending party, was, and is, absolutely void. It is not necessary here to discuss the status of the other parties to the contract.

[3] The appellants' contention that, because they simply owned a gas well and that the only alleged business transaction was the operation of the lease, appellants were not conducting a business, within the terms of the assumed name statute, is overruled. The sale of the gas to appellee was a daily and recurring transaction. They had their gas to sell and, finding one purchaser, made a contract with it to take all of its gas, instead of having to sell it to many customers. Certainly this was transacting business, and comes within the statute.

[4, 5] The proposition that appellants could establish their cause of action without the aid of the illegal transaction, and were therefore entitled to recover, cannot be sustained. The proposition as presented in the abstract is correct, if it was true that they could establish their case without the aid of the illegal transaction, but is not correct as applied to the facts of this case. The very transaction upon which this suit is based was forbidden by law, and therefore void as to the asserting party. In order to recover, they must recover upon a transaction resting under the condemnation of the law. Hence they cannot establish their cause of action without the aid of such transaction. Stone v. Robinson (Tex. Com. App.) 234 S. W. 1095; Read v. Smith, 60 Tex. 379, 382; Wiggins v.

Bisso, 92 Tex. 221, 222, 47 S. W. 637, 71 Am. St. Rep. 837; Oliphant v. Markham, 79 Tex. 543, 547, 15 S. W. 569, 23 Am. St. Rep. 363.

We therefore affirm the judgment of the trial court.