O'NEAL et al. v. ALLISON et ux. (No. 1725.)

Court of Civil Appeals of Texas. Beaumont. Oct. 4, 1928.

See, also, 292 S. W. 269.

F. M. Sheffield, of Beaumont, for appellants.

Howth, Adams & Hart of Beaumont, for appellees.

O'QUINN, J. Appellees sued appellants in the county court at law of Jefferson county, alleging that on May 22, 1923, they purchased

of appellants a bill of furniture on the installment plan, amounting to $440.50; that they made the required down payment; and that on November 3, 1924, they had paid to appellants on said bill the sum of $315, leaving a balance of $125.50; that on said date appellee C. C. Allison's work called him out of town (the city of Port Arthur), and that he made known to appellants that he was having to go out of town, giving them the address to which he was going, and agreed with appellants that said furniture should be stored in appellants' warehouse, and that the said sum of $125.50 could be paid by appellees in a lump sum or in installments at a later date; that as soon as appellees left town appellants breached their said agreement with appellees, and, without giving appellees any notice whatever, converted said furniture and sold same and refused to return same to appellees or to pay them any sum therefor; that said furniture so converted by appellants was at the time it was converted of the actual market cash value of $440.50; that appellees had at all times been ready, willing, and able to pay appellants said sum of $125.50, and prayed for judgment in the sum of $259.50, which was the value of said furniture less the said sum of $125.50, and less the sum of $55, the value of two articles which appellees were allowed to keep in their possession at the time said furniture was stored.

Appellants answered by general demurrer, general denial, and specially denied that appellees had informed them as to what place they were going when they left town, or what their address would be, or that any agreement was made with appellees that payment of the balance due on said furniture could be paid in a lump sum or in installments at a later date, but, to the contrary, that appellees agreed with appellants that payments on said furniture should continue to be made monthly as per the original contract on the sale of same. Appellants further alleged and answered that the reason said furniture was stored with them was that appellees desired to take said furniture with them to where they were going out of the state, to which appellants would not agree; that after appellees left town and had been gone for several months and not hearing anything from them and not having received any further payments on said furniture, they exercised their right under the mortgage given them by appellees at the time the furniture was bought, and repossessed themselves of said furniture left in storage with them in the collection of their said debt, and hence were not liable to appellees for the value of same.

The cause was tried before the court without a jury, and judgment rendered for appellees in the sum of $259.50. The case is before us on appeal.

The court, at the request of appellants, filed his findings of fact and conclusions of law. There is also in the record a complete statement of facts duly agreed to by the parties and approved by the court.

As shown by the court's findings of fact and by the statement of facts, appellees purchased a bill of furniture from appellants, amounting to $440.50, making a down payment, leaving a balance of $393, which was to be paid in installments of $35 per month. On November 3, 1924, appellees had made payments reducing the debt to $125.50. At the date of the purchase appellee C. C. Allison executed to appellants a chattel mortgage containing the following clause:

"And providing further, that until default shall be made by the said mortgagor in any of the stipulations of this mortgage, it shall be lawful for him to retain possession of said goods and chattels and use of same with proper care; but, if said mortgagor or any other person shall attempt to remove said goods and chattels from the county, or sell, or otherwise make away with them, or dispose of same, without the consent of mortgagee or its representatives in writing expressed or if said mortgagor shall fail to pay any installment as it becomes due, then all of said installments unpaid shall become at once due and payable and said mortgagor or its representative shall have the right and is hereby authorized and empowered to take possession of said goods and chattels, with or without process of law * * * said mortgagor hereby waiving any claim of action for trespass or damages on account of said taking * * * and to sell same at public or private sale, with or without notice, and after paying this indebtedness and expense, the balance, if any remains, shall be paid to the mortgagor or his assignee."

Among other things, the court found:

"2. I find that on or about November 3, 1924, the plaintiffs, being called out of town, stored said bill of goods of furniture with the defendants, giving the defendants the address to which plaintiffs were going, but that as soon as plaintiffs left town defendants breached the terms of their agreement, and without giving plaintiffs any notice whatever, converted and sold said furniture, without complying with the law governing the sale of goods in storage.

"3. I find that when plaintiffs left town on November 3, 1924, that they carried with them one oil stove and rocker, aggregating the total sum and market value at said time of $55, and this, of course, was not stored with the defendants when plaintiff left town.

"4. I find that plaintiffs have been ready, willing and able at all times to pay defendants the sum of $125.50, still owing defendants on said bill of goods of furniture, and that plaintiffs have gone to defendants to pay same out, but were advised by defendants that said furniture had been put back in stock to be sold.

"5. I find that the market value of the goods belonging to plaintiffs which was converted by the defendants was at least $385 on November 3, 1924, the date plaintiff placed same with defendants to be stored, and that the market value of said goods at the time and place of conversion by the defendants was the sum of $385. I arrive at this conclusion in the follow-

ing manner, the market value at the time the goods was delivered to the defendant for storage being $385, if they were not in the same condition at the time of the conversion the fault was that of the defendants.

"6. I find that defendants, though often requested, have failed and refused to deliver back to plaintiffs said bill of furniture stored with defendants by plaintiffs upon plaintiffs offering to pay defendants the sum of $125.50 still due, and have failed and refused to pay plaintiffs the market value of said furniture so converted, as described in the foregoing paragraph, and have failed and refused to refund to plaintiffs or to pay to plaintiffs the sum of $259.50, being the difference between the market value of said furniture so converted at the time and place of conversion, and the balance due to defendants by plaintiffs.

"7. I find that when said bill of goods was stored with the defendants herein, when the plaintiffs left town, that the defendants knew that said goods were merely being placed in storage, and that the plaintiffs still claimed same and still wanted same later on.

"8. I find that there was no legal foreclosure on the instrument executed on May 22, 1923."

"11. I find that the defendants kept said furniture in question in their warehouse from November 3, 1924, until April 8, 1925, without any cost to the plaintiffs and on that date the defendants, without giving the plaintiffs any notice whatever or without complying with the law governing the sale of goods in storage, placed said furniture back in stock and sold the same.

"12. I find that the date of conversion of said furniture was April 8, 1925, and that the place of conversion was Beaumont, Texas.

"13. I find that at the time said furniture was placed back in stock by the defendants, that the same was accomplished without any breach of the peace, and that the plaintiffs were not present at said time and knew nothing about the same.

"14. I find that between the dates of November 3, 1924, the same being the date on which the plaintiffs left Port Arthur, Texas, and the date of their return to Texas, the same being on or about May the 1st, 1925, that the plaintiffs moved to three different places in the state of Louisiana, that they did not write to the defendants during said time, nor did they make any payment whatever on said furniture during the said time, nor did the defendants communicate with the plaintiffs during said time."

Based upon its findings, the court concluded that appellees were entitled to recover the sum of $259.50, that being the difference between the market cash value of the property converted by appellants, $385, and the unpaid balance of $125.50.

Appellees object to our considering appellants' propositions set forth in their brief, because:

(a) Said propositions are too general and do not point out any specific error of the trial court, and do not refer to any action or ruling of the court pointing out wherein such ruling is erroneous, as is provided by the rules for the Courts of Civil Appeals.

(b) Said propositions are not based upon and do not refer to any assignments of error, there having been no assignments of error filed in the lower court.

Appellants present four propositions, to wit:

(1) "It is well settled law that a mortgagee having the right under the terms of his mortgage to take possession of the mortgaged property upon default of the mortgagor to make payment of any installment due for the purchase price of the mortgaged property cannot be guilty of any trespass or for conversion in peaceably exercising such right."

(2) "The measure of damages in this case is the difference between the actual cash market value of the furniture converted at the time and place of conversion and the balance of One Hundred, Twenty-five and 50/100 ($125.50) Dollars remaining unpaid."

(3) "If in the trial of a question of fact before the judge improper evidence is submitted (admitted) over an objection and there is nothing in the record to show that it was not considered by the judge in deciding the issue, the court on appeal cannot say that he was not influenced by the evidence and hence must hold it was error."

(4) "The appellate court will, where a case is tried before a court, reverse a judgment when it is shown that the judgment is in conflict with the findings of fact and statement of facts."

These propositions are literal copies of the four assignments of error found in the back of appellants' brief. The assignments of error were not filed in the trial court, and do not form any part of the record brought up in the case. Their first appearance is in appellants' brief. We believe both objections to the assignments are well taken. The assignments are too general and fail to point to any specific error, as required by the rules. But, if not so, they were not filed in the court below and brought up in the transcript, as required by articles 1844 and 2281, R. C. S. 1925, and hence cannot be considered. Peacock v. Moore (Tex. Civ. App.) 125 S. W. 943; Ætna Accident & Liability Co. v. Trustees of First Christian Church (Tex. Civ. App.) 218 S. W. 537. But it may be said that we should consider the assignments under our holding in this case on former appeal. 292 S. W. 269. The record there as to appellants' assignments of error was at it is here; there were no assignments of error filed in the court below nor any brought forward in the transcript. Objection to their consideration was there urged. We overruled the objection because each of the assignments there attacked the court's conclusions of law, and said:

"Since the findings of fact and conclusions of law filed by the court were necessarily filed subsequently to the rendition of the judgment, appellants had the right to complain of *such findings and conclusions* by assignments of error presented in their brief, though not filed in the trial court nor contained in the transcript."

It will be observed that the assignments here presented do not complain of the court's findings or conclusions, but are each a mere general proposition of law. They do not rest upon the same footing as did the assignments on the former appeal. This being true, said assignments cannot be considered, and no error apparent upon the face of the record appearing, the judgment should be affirmed.

However, if the assignments were considered, the judgment should be affirmed. The undisputed facts show that appellees purchased from appellants a bill of furniture, amounting to $440.50, making a down payment, and the remainder, $393, to be paid in monthly installments of $35 per month; that on November 3, 1924, payments had been made reducing the amount to be paid to $125.50. The court found from the evidence that on said last-named date, because of the nature of the work engaged in by appellee C. C. Allison, he was called out of the city where he resided, and that it was agreed between appellants and appellees that said furniture, except two small articles, would be stored with appellants, and that appellees should have the right to pay the balance of $125.50 at some time in the future, either in a lump sum or in installments; that appellees advised appellants of the address to which they were going, and that it was understood that said furniture was being merely stored, and that appellees wanted same, and would pay the balance on same; that appellees were ready, willing, able, and had offered to pay the said balance on said furniture, but that appellants refused to accept the payment or to return the furniture; that as soon as appellees left the city appellants converted said furniture and refused to account to appellees for same; that said furniture so converted was at the time of the conversion of same of the actual market cash value of $385. We think all of these findings are amply supported by the record. This is not a case of the purchaser failing or refusing to pay the installments as per contract, and the seller repossessing the property under and by virtue of his mortgage, but is one where the purchaser, being called away from his home, voluntarily enters into an agreement with the seller—the mortgage holder—placing the property with the mortgage holder for storage purposes only, and then the mortgage holder, without notice to the purchaser, converts to his own use and benefit the entire property, and refuses either to return the property upon offer by the purchaser to pay the balance, or to account for the value of the property. We do not think any such breach of the contract of sale was shown as would justify or authorize appellants to take possession of the property under the mortgage. Furthermore, if there had been such failure on the part of appellee to make payments as stipulated in the contract of sale, the mortgage did not authorize appellants to repossess themselves of the property and convert the whole of same to their benefit, but the terms of the mortgage authorized appellants "to take possession of said goods and chattels, with or without process of law * * * and to sell same * * * and after paying this indebtedness and expense, the balance, if any remains, shall be paid to the mortgagor or his assigns." This appellants did not do or attempt to do. In the first place, they did not take possession of the property under the mortgage, but it was placed in their possession for storage to be kept for appellees and returned to them on the payment of the balance of the purchase money. Demand for the furniture and an offer to pay said balance was made by appellees. Appellants declined both, and say they are not liable to appellees because of the repossession clause in the contract of sale. The actual market cash value of the property converted, at the time of its conversion, was $385. The original cost of the whole bill was $440.50. Of this $315 had been paid. To allow appellants to use and retain this money and to also take and keep the property would be wholly without equity and flagrantly unjust. Under the facts, appellants were not authorized to invoke the repossession clause of the mortgage, but if they had been such as to authorize a repossession under same, then appellants must have resold the property and accounted to appellees for the difference between the amount for which the property was sold and the balance owing by appellants on same. They could not simply take the property, put the same back in stock, keep it and sell it, and convert to themselves the whole of its value. The actual market cash value of the property at the time of its conversion being $385, and the balance due on same by appellees being $125.50, appellees were entitled to recover the difference, which is $259.50, the amount of the judgment. The cause in the instant trial in the court below was in accordance with the holding of this court on former appeal.

No error appearing, the judgment is affirmed.