### KNOTT v. BALDWIN et al.
#### No. 9410.

Court of Civil Appeals of Texas. Galveston.

Dec. 15, 1930.

On Motion for Rehearing Jan. 8, 1931.

P. C. Del Barto, of Houston, for plaintiff in error.

Vinson, Elkins, Sweeton & Weems, and C. M. Hightower, all of Houston, for defendants in error.

LANE, J.

This suit was brought by Mrs. Jacob C. Baldwin and J. A. Shine against A. R. Knott to recover damages which they allege they suffered by reason of the action of A. R. Knott in tearing down a certain drilling rig, which was being used by plaintiffs in drilling for oil, and in otherwise damaging the oil well then being drilled by plaintiffs.

Defendant Knott answered by general denial and by averring that the drilling rig belonged to him. He admitted that he had leased the same to plaintiff Shine under certain stipulated conditions, but avers that the rig was returned to him, and, without authority, plaintiffs thereafter took possession of the same and therewith began to drill an oil well, and that as soon as he discovered that plaintiffs were so unlawfully using his rig he proceeded to remove the same from plaintiffs' premises and to take possession thereof, as he had the right to do. He also alleges that Shine obtained the lease of the rig by practicing fraud upon him. He specially denies that in removing his rig from the

well being drilled by plaintiffs he damaged such well, as alleged by plaintiffs.

By cross-action he alleges that plaintiffs had wrongfully taken and kept possession of his rig, to his damage in the sum of $7,500.

Plaintiffs by supplemental petition denied generally the averments of the defendant's answer.

The case was tried by a jury to which the court submitted special issues, all of which that were required to be answered were answered in favor of the plaintiffs, and upon such answers the court rendered judgment for the plaintiff for the sum of $1,400. From such judgment defendant A. R. Knott has appealed.

For convenience we shall refer to the respective parties as appellant and appellees.

At the threshold we are met with objections, urged by appellees, to a consideration of any of appellant's assignments of error found in his brief, upon the grounds that none of them were filed in the trial court and are not assignments of error set forth in appellant's motion for new trial, and that the assignments set forth in the motion for new trial are not brought forward in appellant's brief.

We have examined the record and find that appellant filed no assignments in the trial court, but that he did file a motion for new trial, which was overruled by the court. Neither true nor substantial copies of any of the assignments of error as set forth in the motion for new trial are set out in appellant's brief.

We feel that, in view of the well-settled rule that, where appellants fail to file in the trial court assignments of error, or to copy into their briefs the assignments of error as set forth in their motions for new trials, appellate courts can only consider fundamental errors, we must sustain appellees' objection to a consideration of the assignments found in appellant's brief. Clonts v. Johnson, 116 Tex. 489, 294 S. W. 844, 846; Ford & Damon v. Flewellen (Tex. Civ. App.) 264 S. W. 603; Id. (Tex. Com. App.) 276 S. W. 903; Bristol v. Noble Oil & Gas Co. (Tex. Civ. App.) 273 S. W. 946; Carrera v. Hines (Tex. Civ. App.) 246 S. W. 1057; Lumbermen's Reciprocal Ass'n v. Ryan (Tex. Civ. App.) 299 S. W. 701, 702; Bray v. City of Corsicana (Tex. Civ. App.) 280 S. W. 609, 610; Beech Hill Distilling Co. v. Tolivar (Tex. Civ. App.) 288 S. W. 254; O'Neal v. Allison (Tex. Civ. App.) 10 S.W.(2d) 257, 259.

In the case of Clonts v. Johnson, supra, appellant filed no assignments of error in the trial court. He did file a motion for new trial, which was overruled, but the assignments of error set forth in the motion were not copied in appellant's brief. In that case the Commission of Appeals held that the appellate court could only consider fundamental error, saying: "Where an appellant or plaintiff in error wholly fails to copy any assignments of error in his brief, the Court of Civil Appeals should confine its consideration of the case to those fundamental errors apparent on the face of the record. Its authority to revise the action of the lower court is limited to those questions (not fundamental) duly assigned as error, and it has no discretion, even though it thinks the ends of justice require such course, to substitute a method of its own for reviewing the judgment of the lower court for that method prescribed by the lawmaking power."

Since we are, under the facts as disclosed in the record of this case, restricted to a consideration of questions duly assigned as error, and such fundamental errors as appear of record, and since no errors have been duly assigned and no fundamental error appears, it becomes our duty to affirm the judgment, even though we may think the ends of justice would require a different judgment, and it is accordingly so ordered.

Affirmed.

## On Motion for Rehearing.

GRAVES, J.

After heretofore refusing appellant's original motion for rehearing, a majority of the court, with Justice LANE dissenting, concluded that his subsequent motion to reconsider that action was well taken to the extent that his assignment of error No. 1, as appearing in his motion for new trial below, which was fully copied into the transcript on appeal, and as reproduced in substance in his brief filed here under designations of "Fourth Assignment of Error" and "Fourth Proposition," respectively, should be considered, the same complaint, as thus successively presented, being in his verbis as follows:

From the motion for new trial:

"Now comes A. R. Knott, defendant in the above entitled and numbered cause, and moves the Court to set aside the verdict of the jury and the judgment of the Court rendered herein on April 8, 1929, and grant him a new trial for the following reasons, to-wit:

"1. Because the verdict of the jury is contrary to the evidence. A preponderance of the evidence, and particularly the testimony of the oil well drillers on whether or not the pulling of the drill stem and pipe out of the casing occasioned any damage on the part of the defendant."

From appellant's brief:

"Fourth Assignment of Error.

"The court erred in rendering judgment against plaintiff in error because the evidence is contrary to the defendant in error on the point of damages.

## "Fourth Proposition.

"The judgment rendered against plaintiff in error is erroneous for lack of evidence and is contrary to the evidence, particularly on the point of damages."

On the reconsideration the majority view is that this presentment in the motion for new trial that was so followed up by at least a substantial reproduction in the brief on appeal plainly, in consonance with the very liberal requirement of R. S. article 1844, "directs the attention of the court to the error complained of," that is, to the court's action in upholding the jury's finding that appellant had caused a $1,700 damage in attempting to tear down the drilling rig from the well and entering judgment thereon, when such verdict was asserted to be contrary to the evidence, particularly that of the oil well drillers themselves; under all the pleadings and proof, as well as the issues of fact relating thereto and submitted to the jury without objection from either party, the only possible question of damage involved was that thus found to have been done by the appellant, wherefore no court, it seems to us, could fail to apprehend just what it was thereby sought to have reviewed when it was charged that "the court erred in rendering judgment against plaintiff in error because the evidence is contrary to the defendant in error on the point of damages." See, also, rules 32 and 24 for the Courts of Civil Appeals, and 101a for the district courts.

On re-examination thereof, we conclude that the authorities cited in our original opinion do not support the holding then made; for instance, while rule 32, supra, provides that "the brief shall contain verbatim copies of such of the assignments of error filed in the trial court and reproduced in the transcript as are relied on in the appeal," it is not so construed in Clonts v. Johnson, formerly quoted from, the court saying: "While it is not necessary that the assignments required to be filed below should be literally copied into the brief, yet they must be at least substantially reproduced." Rule 32, Court of Civil Appeals, and rule 101a, district and county courts; Seby v. Craven Lumber Co. (Tex. Civ. App.) 259 S. W. 1093; Equipment Co. v. Luse (Tex. Civ. App.) 250 S. W. 1104; Green v. Shamburger (Tex. Civ. App.) 243 S. W. 601; Carey v. Tex. Pac. Coal & Oil Co. (Tex. Civ. App.) 237 S. W. 309; Green v. Hall (Tex. Com. App.) 228 S. W. 183."

The court then goes on to hold, as formerly quoted, that, where an appellant wholly fails to copy—that is, to even substantially reproduce—any assignment of error in his brief, only fundamental error will be considered on the appeal; but that is not the state of facts here, as the preceding copies from the record make manifest, where the same thing in material substance was well-nigh literally assigned in both courts. Neither do any of the other cases before referred to sustain that opinion on the legal equivalent of the same situation, Ford Damon v. Flewellen, 264 S. W. 602, 603, by this court, in which no assignment at all was filed in either court, being in no wise different in purport from Clonts v. Johnson; it is deemed unnecessary to review the remaining ones.

To refuse consideration of this assignment in the circumstances would seem like "parsing a litigant out of court," an effect we feel unwilling to give to rules that were intended, not only to promote the orderly dispatch of legal business, but to at least reach after the attainment of justice between the parties as well.

Our Supreme Court, through the Commission of Appeals, in Morrison v. Neely, 231 S. W. 728, 731, in reversing a holding by the Court of Civil Appeals to the contrary, after determining that R. S. article 1844, supra, then 1612, should be liberally construed as previously held in Clarendon Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105, said: "While it is true, as is said by the Court of Civil Appeals, the assignments in the instant case 'do not specifically attack the findings of fact of the trial court.' yet they are sufficient to 'direct the attention of the court' to the fact that appellant complained that the evidence was not sufficient to support the judgment; a question the determination of which is the exclusive province of the Court of Civil Appeals, as the Supreme Court has no jurisdiction to pass upon the sufficiency of the proof to support any given judgment. Since the assignments were sufficient to direct the attention of the court to an error complained of, which it only had the right to pass upon, it should have considered them."

While the attack in that instance was made upon findings of fact by the trial court rather than upon the verdict of a jury, as in this instance, no difference on that account in the principle applicable is perceived. Other authorities in point are Hess v. Turney, 109 Tex. 208, 203 S. W. 593, at page 595 (5): Barkley v. Gibbs (Tex. Com. App.) 227 S. W. 1099; Green v. Hall (Tex. Com. App.) 228 S. W. 183, syl. 1; Afflerbach v. Yorktown (Tex. Com. App.) 289 S. W. 1003.

On considering the complaint so made, the court is unanimous in the conclusion that the evidence was insufficient to support the verdict and judgment for damages—indeed, all agree that there was not enough testimony of any probative force to raise an issue as to the appellant's having caused any damage to the well by what he did in his attempt to tear down the drilling rig; the question was submitted to the jury in two inquiries, as follows:

"Special Issue No. 2.

"Was the cutting and removal of the 300 feet of casing from Kitzman's well No. 2 made necessary by the act of A. R. Knott and his employees in attempting to tear down the drilling rig on August 25, 1928?

"Answer 'It was' or 'It was not' as you find the facts to be.

"Special Issue No. 3.

"If you have answered special issue No. 2 'It was' and only in that event then answer:

"What sums of money, if any, were reasonably and necessarily expended by the plaintiffs in cutting and removing said casing, taking into consideration such reasonable sums that were expended for labor, fuel oil, expert casing cutter, special equipment and new casing.

"Answer by stating the amount in dollars and cents."

The first of these was answered "It was," the second, "$1,700.00," whereupon the court, after reducing this amount to $1,400.00, entered judgment against appellant for that sum.

So the question of whether appellant caused any damage was determinable solely by whether or not the cutting and removal of the 300 feet of casing the appellees afterwards took from the well had been made necessary by any act of his, and no witness testified that it was; in the absence of any such showing, the mere fact that $1,700.00 may have been reasonably and necessarily expended by the appellees in cutting and removing the casing in no wise tended to fasten responsibility for the outlay on appellant, especially when their own driller in charge at the time, Mr. Allen, emphatically swore he had done nothing to cause any of it; this witness' testimony on the point is controlling, we think, since he was the only one connected with the appellees who was shown to have been in position to know, not only just what appellant had done, but its effect as well; after having already testified that the casing in the well had some time before that been dropped and broken off about 300 feet from the top, he added with reference to what Mr. Knott had done: "With reference to whether I was the driller in charge in August, 1928, I went there on the 24th day of August. With reference to whether I observed anything on that day about anyone trying to dismantle the rig, my answer is, I think we had started the well on that day, and I believe it was the next day Mr. Knott came there to get his pipe, or break down the rig. When he came there he run into the broken place and lifted the pipe off of the other pipe the same as we did, and let it down, and turned and came on back. He did not go in there any more. That operation had no effect on the casing, because it was already that way. * * * I could not see how a mere pulling of the casing out of that well, the drill pipe, on the 24th or 25th of August by Mr. Knott, could have in any way injured the well." As stated, there is no contradiction of this in the record; the statement of the witness Shine that the casing had been dropped 290 feet while he was working on the well and parted, but had been connected back together about the 20th of August, does not constitute any, because he added: "I did not do it personally, but had it done. The crew working out there did it under my supervision. Mr. Allen was the driller. Mr. Allen fixed it. He was running the rig. With reference to whether I had charge or any connection with the well when Mr. Knott tried to dismantle it, I was not there at that time." Thus, whatever uniting there ever was of the prior break had been done by Mr. Allen, and he says it was still broken when appellant went in there.

The witness Neyland did not come into the matter at all until about three months after the alleged damage was claimed to have been so done, hence his testimony that the casing had been dropped, separated, and bent, did not in any way indicate that appellant had caused that; neither did that of any other witness.

The appellant himself testified: "I pulled part of the drilling pipe out of the hole. With reference to how was that casing in the well set, and if it was in good repair, everybody knew that casing was in two. The cause of that was because the pipe was dropped, it had parted. I did not cause this trouble when I tried to dismantle the well, I was not there when the pipe was dropped. There was no part of the casing dropped when I tried to pull the drill pipe out, it had already been dropped. I did not damage any part of that well pulling the drill pipe out that I could detect; I do not know how I could have done it. * * * With reference to whether I caused, by pulling the drill pipe, this well to cave in any way, there was not a chance. In pulling the drill pipe out of the casing, in dollars and cents, I could not see how I did any damage whatever to that well."

Further discussion is deemed unnecessary, this state of the proof conclusively showing a lack of support for the verdict and judgment.

If any of the other questions urged by appellant are so raised as to require consideration, they are not regarded as involving reversible error.

The rehearing has been granted, with Justice LANE dissenting as indicated, and the trial court's judgment has been reversed and the cause remanded for another trial.

Rehearing granted, Justice LANE dissenting, judgment reversed, cause remanded.